**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF KENTUCKY**
**PIKEVILLE DIVISION**

| | | |
|---|---|---|
| **ALMA ENERGY, LLC.** | : | |
| Debtor -in-Possession | : | Case No: **07-70370** |
| | : | Chapter 11 |
| | : | |
| | : | Judge William S. Howard. |
| | : | Adv. Proc. No: |
| **ALMA ENERGY, LLC.** | : | |
| Plaintiff | : | |
| | : | |
| -vs- | : | |
| | : | |
| **KENTUCKY COAL VENTURE I, LLC** | : | |
| Serve | : | |
| CORPORATION SERVICE COMPANY | : | |
| D/B/A CSC-LAWERS INCORPORATI | : | |
| 421 WEST MAIN STREET | : | |
| FRANKFORT, KY 40601 | : | |
| | : | |
| **KENTUCKY COAL VENTURE II, LLC** | : | |
| Serve | : | |
| CSC-LAWYERS INCORPORATING | : | |
|     SERVICE COMPANY | : | |
| 421 WEST MAIN STREET | : | |
| FRANKFORT, KY 40601 | : | |
| | : | |
| **THC KENTUCKY COAL VENTURE** | : | |
| **LLC** | : | |
| Serve | : | |
| WARREN E. HALLE | : | |
| 2900 LINDEN LANE SUITE 300 | : | |
| SILVER SPRING, MD 20910 | : | |
| | : | |
| **WEST VIRGINIA COAL VENTURE I** | : | |
| **LLC** | : | |
| Serve | : | |
| CORPORATION SERVICE COMPANY | : | |
| 2711 CENTERVILLE ROAD SUITE 400 | : | |
| WILMINGTON DE 19808 | : | |
| | : | |

**KWV OPERATIONS LLC**                         :
Serve                                          :
CORPORATION SERVICE COMPANY                    :
209 WEST WASHINGTON STREET                     :
CHARLESTON WV 25302                            :
                                               :
**WARREN E. HALLE**                            :
Serve                                          :
WARREN E. HALLE                                :
2900 LINDEN LANE SUITE 300                     :
SILVER SPRINGS, MD 20910                       :
                                               :
**CONSOL CAPITAL LLC**                         :
d/b/a NextGen Coal                             :
Serve                                          :
JODI L. WABER                                  :
23339 MIRABELLA CIRCLE NORTH                   :
BOCA RATON FL 33433                            :
                                               :
**JODI L. WABER**                              :
23339 MIRABELLA CIRCLE NORTH                   :
BOCA RATON FL 33433                            :
                                               :
**TONY GANNACONE III**                         :
6531 AMBERWOODS DRIVE                          :
BOCA RATON, FLORIDA 33433                      :
                                               :
**PIKEVILLE ENERGY GROUP LLC**                 :
Serve                                          :
MIKE FRANCISCO                                 :
183 TOLLAGE CREEK                              :
PIKEVILLE, KY 41501                            :
                                               :
**BLACKBERRY ENERGY LLC**                      :
Serve                                          :
NATHAN WILLIAMS                                :
59 DAVIS BRANCH ROAD                           :
STONE, KY 41567                                :
                                               :
**NATHAN'S WELDING LLC**                       :
Serve                                          :
NATHAN WILLIAMS                                :
59 DAVIS BRANCH ROAD                           :
STONE, KY 41567                                :
                                               :

**DARRELL WILLIAMS**                     :
GENERAL DELIVERY                         :
WILLIAMSON, WV 25661                     :
                                         :
**NATHAN WILLIAMS**                      :
59 DAVIS BRANCH ROAD                     :
STONE, KY 41567                          :
Defendants                               :

# ADVERSARY COMPLAINT

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

Comes the Debtor, **Alma Energy, LLC,** and in furtherance of its fiduciary duty as a

Debtor-in-Possession to protect the Bankruptcy Estate and protect the interests of Secured and

Unsecured Creditors, for its Complaint against the Defendants, states as follows:

## JURISDICTION AND VENUE

1. The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §1334.

This is a core proceeding under 28 U.S.C. §157(b). This is a proceeding pursuant to 11 U.S.C.

§§101(32), 105, 362, 502, 544, 547, 548, 550, 551, 558, 1106, 1107, and 1108, and other

provisions of Title 11 of the United States Code. This is a proceeding pursuant to F.R.B.P. 7065

and F.R.Civ.P. 60 and 65. This is a proceeding pursuant to Kentucky Revised Statutes Chapters

365.020 et seq., 365.880 et seq., and 378 et seq. and other Chapters and Sections of the Kentucky

Revised Statutes and the common law of Kentucky. This adversary relates to case 07-70370, a

Chapter 11 action now pending in the United States Bankruptcy Court for the Eastern District of

Kentucky, Pikeville Division. The Defendants are subject to the jurisdiction of this Court.

**PARTIES**

2. The Plaintiff, ALMA ENERGY, LLC, (hereinafter "Debtor", "Debtor-in-Possession", "Alma", or the Plaintiff) is a limited liability corporation that was organized and exists under the laws of the Commonwealth of Virginia, and exists and is duly authorized to do business as a Foreign Limited Liability Company under the laws of the Commonwealth of Kentucky, that is a legal entity that can sue and be sued, and that is also the Debtor under the provisions of Title 11 of the United States Code, and is a Debtor-in-Possession under Title 11 of the United States Code.

3. The Defendant, KENTUCKY COAL VENTURE I, LLC (hereinafter "KCV I" or Defendant) is  a limited liability corporation that was organized on July 27, 2006, and exists under the laws of the state of Delaware, and that is a legal entity that can sue and be sued. KCV I is owned directly or indirectly by one or more of the Defendants named herein or by one or more unnamed wholly owned subsidiary or parent corporations or other entities thereof, and is duly authorized to do business as a Foreign Limited Liability Company in the Commonwealth of Kentucky.

4. The Defendant, KENTUCKY COAL VENTURE II, LLC (hereinafter "KCV II" or Defendant) is  a limited liability corporation that was organized on October 2, 2006, and exists under the laws of the state of Delaware, and that is a legal entity that can sue and be sued. KCV II is owned directly or indirectly by one or more of the Defendants named herein or by one or more unnamed wholly owned subsidiary or parent corporations or other entities thereof, and is duly authorized to do business as a Foreign Limited Liability Company in the Commonwealth of Kentucky.  KCVII may hold bare legal title to property rights in which Alma Energy LLC is contractually and legally entitled to an interest.

5. The Defendant, THC KENTUCKY COAL VENTURE, LLC (hereinafter "THC" or Defendant) is  a limited liability corporation that was organized and exists under the laws of the state of Maryland on July 21, 2006, and that is a legal entity that can sue and be sued. The creditor THC is owned directly or indirectly by one or more of the Defendants named herein or by one or more unnamed wholly owned subsidiary or parent corporations or other entities thereof, and is duly authorized to do business as a Foreign Limited Liability Company in the Commonwealth of Kentucky.

6. The Defendant, WEST VIRGINIA COAL VENTURE I, LLC (hereinafter "WVCVI" or Defendant) is a limited liability corporation that was organized and exists under the laws of the state of Delaware, and that is a legal entity that can sue and be sued. WVCVI is owned directly or indirectly by one or more of the Defendants named herein or by one or more unnamed wholly owned subsidiary or parent corporations or other entities thereof, and is duly authorized to do business as a Foreign Limited Liability Company in the Commonwealth of Kentucky. WVCVI may hold bare legal title to property rights in which Alma Energy LLC is contractually and legally entitled to an interest.

7. The Defendant, KWV OPERATIONS, LLC (hereinafter "KWV" or Defendant) is  a limited liability corporation that was organized on March 2, 2007, and exists under the laws of the state of West Virginia, and  is a legal entity that can sue and be sued. KWV is owned directly or indirectly by one or more of the Defendants named herein or by one or more unnamed wholly owned subsidiary or parent corporations or other entities thereof, and is duly authorized to do business as a Foreign Limited Liability Company in the Commonwealth of Kentucky.  KWV may hold bare legal title to property rights in which Alma Energy LLC is contractually and legally entitled to an interest.

8. The Defendant, WARREN E. HALLE, is a natural person residing or having a mailing address of 2900 Linden Lane, Ste 300, Silver Spring, MD 20910, who does business in the Commonwealth of Kentucky, both individually and through the above named Limited Liability Corporations, is a creditor of Alma, and is subject to jurisdiction of this Court.  KCVI, KCVII, WVCVI, KWV, and NextGen Coal are owned or controlled directly or indirectly by WARREN E. HALLE.

9. The Defendant, CONSOL CAPITAL LLC (hereinafter "Consol" or Defendant) is a limited liability corporation that was organized on September 1, 2006, and exists under the laws of the State of Florida, and that is a legal entity that can sue and be sued. NEXTGEN COAL is a fictitious name, registered in the State of Florida, under which CONSOL CAPITAL LLC does business. Consol is a Creditor of Alma's that is owned and controlled directly or indirectly by one or more of the Defendants Jodi L. Waber, Tony Gannacone III, and / or Warren E. Halle.

10. The Defendant, JODI L. WABER, is a natural person residing or having a mailing address of 23339 Mirabella Circle North, Boca Raton FL 33433, who does business in the Commonwealth of Kentucky, both individually and through Consol Capital LLC d/b/a NextGen Coal, and is subject to jurisdiction of this Court.

11. The Defendant, TONY GANNACONE III, is a natural person residing or having a mailing address of 6531 Amberwoods Drive, Boca Raton, Florida 33433, who does business in the Commonwealth of Kentucky, both individually and through Consol Capital LLC d/b/a NextGen Coal, and is subject to jurisdiction of this Court.

12. Other unnamed Defendants associated with WARREN E. HALLE and the Plaintiff may be named by amendment to Plaintiff's Complaint.

13. The Defendant PIKEVILLE ENERGY GROUP LLC, (hereinafter "Pikeville") is a limited liability corporation that was organized on April 8, 2008, and exists under the laws of the Commonwealth of Kentucky, and is a legal entity that can sue and be sued.

14. The Defendant BLACKBERRY ENERGY LLC, (hereinafter "Blackberry" ) is a limited liability corporation that was organized on March 20, 2008, and exists under the laws of the Commonwealth of Kentucky, and is a legal entity that can sue and be sued.

15. The Defendant NATHAN's WELDING LLC (hereinafter "Nathan's Welding") is  a limited liability corporation that was organized on October 11, 2004, exists under the laws of the Commonwealth of Kentucky, and  is a legal entity not in good standing that can, none-the-less, sue and be sued.

16. The Defendant, DARRELL WILLIAMS (hereinafter "Darrell"), is a natural person residing or having a mailing address of General Delivery, Williamson, WV, who does business in the Commonwealth of Kentucky.

17. The Defendant, NATHAN WILLIAMS (hereinafter "Nathan") is a natural person residing or having a mailing address of 59 Davis Branch Road, Stone, Ky 41567.

18. Except where the context requires otherwise, the Joint Defendants KCVI, KCVII, WVCVI, KWV, CONSOL d/b/a NextGen, unnamed defendants associated with Warren E. Halle, and WARREN E. HALLE individually, will be referred to collectively by the last name of the defendant and principal owner or associate of each, "Halle", or as the "Halle Entities".

The Defendant's PIKEVILLE ENERGY GROUP LLC, BLACKBERRY ENERGY LLC, NATHAN's WELDING LLC, , DARRELL WILLIAMS, and NATHAN WILLIAMS are joined as Parties for the reason that in their absence, the Court cannot accord complete relief among Alma and the Halle Entities.

## STATEMENT OF FACTS COMMON TO ALL COUNTS

19. On April 21, 2005 Alma Energy, LLC, was formed in the Commonwealth of Virginia with three members, Joe Street ("Street"), Joe Roulett ("Roulett"), and Nathan Williams ("Nathan"). On June 28, 2005, Alma Energy LLC, purchased from Martin County Coal for the sum of 1.7 million dollars, a partial assignment of a mineral Lease on 496 acres located near Ransom, Kentucky, with coal reserves of approximately 2 million tons of the Lower Alma Seam of coal, along with associated mine structures. In the fall of 2005, Alma opened Right Fork Energy mine # 1 (hereinafter referred to as "Right Fork"), initially receiving over $70 dollars per ton for Right Fork's coal marketed as "steam coal". In June 2006, Alma purchased for 1.5 million dollars another partial assignment of a lease adjacent to the first tract from Martin County Coal of Lower Alma Seam coal (hereinafter referred to as "Netley"). This tract contains over 1,800,000 recoverable tons of coal.

20. In early 2006, Alma management sought additional investment capital to expand operations and invest in additional properties. On July 27, 2006, a new entity, Kentucky Coal Venture I LLC ("KCV I"), was organized for that purpose. Alma, owned by Street, Roulett, and Nathan Williams ("Nathan"), and THC Kentucky Coal Venture I LLC ("THC"), owned by a Warren E. Halle ("Halle"), were named as members of KCV I, with THC being designated the managing member with full control of business and financial decisions. On August 9, 2006, Alma entered into business agreements with Halle and THC. In connection with these agreements, on or about August 21, 2006, Alma executed and delivered to KCV I a partial Assignment of Leases and Agreements dated August 21, 2006 (the "Assignment"). By the executory Assignment, Alma commenced assignment to KCV I of all of its rights, title and interest in and to the following two described mineral leases and two agreements:

(a) Partial Assignment and Assumption Agreement dated June 28,2005 from Martin County Coal Corporation to Alma Energy, LLC, Assignor obtained its rights pursuant to pursuant to an Amended and Restated Lease dated February 22, 1993 from Pocahontas Development Corporation.

(b) Partial Assignment and Assumption Agreement dated June 29,2006 from Martin County Coal Corporation to Alma Energy, LLC, Assignor obtained its rights pursuant to pursuant to an Amended and Restated Lease dated February 22, 1993 from Pocahontas Development Corporation.

(c) Permit Transfer Agreement dated June 29, 2006 from Stone Mining Company to Nathan's Welding, LLC, which transfers Kentucky Surface Coal Mining and Reclamation Permit No. 898-5758 to Nathan's Welding, LLC.

(d) Permit Agreement between Nathan's Welding, LLC and Alma Energy, LLC dated June 29, 2006 giving Alma Energy, LLC the irrevocable right to mine, by itself or its designees, on all permits held by Nathan's Welding, LLC.

21. The aforementioned two mineral leases are referred to herein as the "Pocahontas Leases". Alma is in possession of two mineral lease appraisals, which were prepared in the Summer of 2006 and which state that the fair market value of the Pocahontas Leases on or about August 2006 was approximately 5.4 million dollars. In connection with the formation of KCV I, of which THC and Alma were the two original members, THC and Alma executed on August 9, 2006, a Limited Liability Company Agreement, THC made a Total Capital Contribution of approximately 4.7 million dollars ($4,700.000.00). Alma executed the above described Assignment and Agreement and commenced transfer pursuant to the terms of the Assignment and Agreement. On closing of the transaction, the 4.7 million dollars contributed by THC to KCV I was disbursed by an attorney for KCV I, Billy Shelton (hereinafter "Shelton"), to the following payees (partial list):

| | |
|---|---|
| Grundy NB (Right Fork Payoff) | $1,513,222.59 |
| Grundy NB (Netley Deep Mine Payoff) | $1,916,332 16 |
| WestRiver Machinery / Joe Street & J.B. Roulett | $1,025,000.00 |
| Alma Energy, LLC (Working Capital) | $  250,000.00 |

22. As part of the August 2006 transactions, two members of Alma, Joe Street and J.B. Roulett (hereinafter referred to as "Street" and "Roulett"), relinquished their memberships in Alma in consideration of the sums paid by Halle, making Nathan Williams ("Nathan") the sole remaining member and owner of Alma. In further consideration, Alma agreed to pay Joe Street one dollar per ton and J.B. Roulett one dollar per ton from all future coal mined by Alma.

23. Under the August 9, 2006, agreements Alma was given the exclusive right to mine and sell all the coal from mineral interests KCV I had acquired from Alma, and from any future coal properties acquired by KCV I during a period of twenty years in and around Pike County Kentucky. The three mines located on the leaseholds are popularly known as "Right Fork", "Little Ty", and "Netley".

24. In 2007, Alma mined approximately 40,742 tons of coal for KCV I which was sold for approximately $2,220,179. Alma was entitled to receive approximately $1,263,362 from the sales, however the exact amount received by Alma from KCV I is not certain.

25. In 2007, Alma alleged that KCV I was in default, and KCV I alleged Alma was in default, under the August 9, 2006, agreements. In an attempt to reconcile the dispute, Alma entered into subsequent agreements with KCV I on February 16, 2007, and on April 11, 2007. Allegations by Alma that KCV I was in default under these agreements, and by KCV I that Alma was in default, resulted in KCV I withholding funds and delaying payments due Alma. This led to restrictions on cash flow that rendered Alma unable to meet its current and long term obligations.

26. On May 22, 2007, KCV I filed with the United States District Court for Maryland, Greenbelt Division, a Complaint against the Debtor, Nathan Williams, Darrell Williams, and Nathan's Welding, LLC (the "Maryland Defendants"), which filing commenced an action styled

Kentucky Coal Venture I, LLC v. Alma Energy, LLC, et al., Case No. 8:07-cv-01339-AW (the "Maryland Action").  In the Maryland Action, KCV I alleged that the Maryland Defendants engaged in a course of conduct that included breaches of contracts, fraudulent acts, knowing misrepresentations, tortious interference, bad faith accounting practices, and other actionable conduct. KCV I sought immediate transfer of all of Alma's assets to KCV I.

27. If KCV I had prevailed in the Maryland Action, significant damages could have been awarded against Darrell Williams, Nathan Williams, the sole owner of the Debtor, and Nathan's Welding, LLC, the holder of mining permits under which the Debtor operates mines in Kentucky, resulting in Alma having to cease to do business.

28. As a result of the alleged defaults under the agreements between the parties, the pending litigation, and the severe cash flow restrictions, on June 1, 2007, Alma filed a voluntary petition for relief under Chapter 11 of the Code in the US Bankruptcy Court for the Eastern District of Kentucky, Case Number 07-70258. In that Chapter 11 Case, Alma commenced Adv. Proc. No. 07-7020 against KCV I; Kentucky Coal Venture II, LLC; THC; West Virginia Coal Venture I, LLC; KWV Operations, LLC; Ken Adamson; Warren Halle; and Tony Gannacone III.

29. On June 4, 2007, KCV I filed an Amended Complaint in the Maryland Action staying the litigation against the Debtor. On June 27, 2007, the Maryland Defendants filed an Answer in the Maryland Action denying any liability to KCV I.

30. KCV I sought to disqualify original counsel for Alma. Alma was unable to obtain funding to find substitute counsel and to obtain funding to prosecute the Chapter 11 proceeding. By Order dated August 3, 2007, the Chapter 11 Case 07-70258 was dismissed upon motion of KCV I, with Adv. Proc. No. 07-7020 being subsequently dismissed on August 24, 2007. KCV I immediately sought to proceed against Alma in the Maryland case.

31. Alma obtained new counsel and negotiated debtor in possession financing with a William Detheridge through his company, BSD1, LLC ("BSD 1"). To prevent further action against Alma in Maryland, and to allow Alma to formulate a plan of reorganization under which it could successfully pursue its business, Alma filed a voluntary petition under Chapter 11 commencing this case (07-70370) on August 13, 2007.

32. On August 20, 2007, the Debtor filed Adv. Proc. No. 07-7025 against the same Halle / Gannacone Defendants, seeking damages and injunctive relief, and alleging that from August 9, 2006, forward, the Halle / Gannacone defendants, and other unknown employees and agents of such defendants, conspired and engaged in a course of conduct that gave rise to claims and causes of action for fraud, tortious interference with contractual relations, breach of contract, and fraudulent transfers.

33. The Halle/Gannacone Defendants filed Answers in Adv. Proc. No. 07-7025 by which they denied any liability to the Debtor and asserted certain defenses. If the Debtor had prevailed on the claims and causes of action at issue in Adv. Proc. No. 07-7025, the contracts dated August 9, 2006 and related thereto would have been enforced, allowing the Debtor the right to mine certain Kentucky and West Virginia properties owned by one or more of the Halle Defendants.

34. On September 29, 2007, the Debtor initiated Adv. Proc. No. 07-7032 against KCV I and Halle, seeking damages and injunctive relief on account of alleged violations of the automatic stay provisions of Section 362(a) of the Code.

35. On October 25, 2007, KCV I and Halle filed an Answer to the Complaint in Adv. Proc. No. 07-7032 by which they denied any liability to the Debtor and asserted certain defenses. If Alma had prevailed on the claims asserted in Adv. Proc. No. 07-7032, it would have been entitled to damages and injunctive relief against KCV I and Halle.

36. THC and Halle filed a Complaint in the Pike Circuit Court, Pikeville, Kentucky, Case No. 07-C1-00910 (the "Pike Action"), alleging that Alma, Nathan Williams, and/or Nathan's Welding, LLC were in default of certain obligations owed to the Plaintiffs, including, but not limited to, an Installment Promissory Note dated February 16, 2007 in the original principal amount of $160,000.00 executed and delivered by Nathan Williams to THC.

37. The Defendants in the Pike Circuit Court Action filed an Answer denying any liability to Plaintiff, and filed claims against Halle and related entities. The Halle Defendants filed Answers denying the allegations and asserting affirmative and other defenses.

38. On October 2, 2007, this Court entered an Order (docket #129 – references to docket numbers are to the docket in case 07-70370) approving a Mining Agreement whereby BSD 1 was appointed as a contract miner for the Debtor. On October 3, 2007, this Court entered an Order (docket #130) approving debtor in possession financing to be provided by BSD 1.

39. On November 20, 2007, the Court entered a Memorandum Order and Opinion (docket #173) interpreting certain provisions of the August 9, 2006, Agreements executed between the Debtor and THC, to-wit "In consideration of the foregoing, the court finds that the agreement between the parties is that the 15% payment is to come from cash flow. It is hereby ordered that any payment to Kentucky Coal Venture will be determined based on cash flow pursuant to the agreements." KCV I filed a Motion for Reconsideration on November 30, 2007.

40. Subsequently, the Mining Agreement and Debtor-in-Possession Financing Agreement with BSD 1 were terminated without objection (docket #225).

41. The litigation of the Adversary Proceedings was extensive and expensive. The parties exchanged more than 15,000 pages of documents in discovery. Approximately fifteen depositions were taken in two different states. Several requests for production of documents, sets

of interrogatories and requests for admissions were served and responded to. It is estimated that the parties to the Adversary and other Court Proceedings incurred more than $750,000.00 in attorneys' fees, costs and expenses.

42. On November 26, 2007, the parties orally agreed to settle the litigation during a mediation hearing held by the Maryland Federal District Court in the Maryland Action. The oral settlement was memorialized by a Settlement Term Sheet, which was executed on November 30, 2007. The Settlement Term Sheet laid the ground work for the preparation and execution of a Settlement Agreement dated December 14, 2007 (the "Settlement Agreement"). The Settlement Agreement took approximately ten days to negotiate and finalize. (Exhibit A).

43. The United States Trustee ("UST"), the Unsecured Creditor's Committee ("UCC"), and certain other parties in interest objected to the Settlement Agreement, requesting further information and assurances regarding said Agreement. In response thereto Alma filed two supplemental documents (docket #202 and docket #207 – attached as Exhibits B and C).

44. Bankruptcy Rule 9019(a) authorizes bankruptcy courts to approve a compromise proposed by a trustee or Debtor in Possession via a motion, after notice and a hearing. In reviewing a proposed settlement, the Court must determine that it is "fair and equitable," and in the best interests of the estate. An Order approving the Settlement Agreement and incorporating the Supplemental Documents was entered February 8, 2008. The adversary action against Mr. Gannacone was subsequently dismissed with the consent of the parties.

45. The intention of Alma in executing the Settlement Agreement was for there to be a separation of Alma and the Halle Entities whereby Alma was to operate properties in Kentucky without interference from Halle, and Halle was to operate properties in West Virginia without interference from Alma.

14

46. The Settlement Agreement provides in Paragraph 17 that "NJW or his designee shall be provided title to the following equipment from THC or its designee:  one of the DB rock trucks (at THC's choice), one scoop, the 980-B loader, the 988-A loader. THC or its designee will retain all other equipment in which KCVI has an interest." and in Paragraph 44 that "If the market price for coal goes below $60 per ton, the mines may close and go idle until the market price of coal increases to above $60 per ton.  The time of closure shall start when coal stops being produced.  The time period that the mines are idle shall not exceed twelve (12) consecutive months.  Prior to shutting down any mine, Alma and/or Alma's Operator or any of its contractors shall give THC or its designee the option to buy the coal for $60 per ton with THC picking up the difference in the cost of trucking that Alma is paying Hampden Coal.  If THC decides to exercise the option, the mines will continue to operate.  This option shall be at the sole and absolute discretion of THC or its designee."

47. As a result of economic coercion and duress in May 2008, in June 2008 Pikeville entered into a sales agreement for the sale of the Debtor's coal to Halle Entities. In the second half of 2008, Alma mined approximately 95,885 raw tons of coal, sold approximately 32,926 tons of merchantable coal, generated revenues of approximately $1,986,915, and paid current royalties and escrowed funds for payment to Creditors under the Plan in excess of $545,810, the exact amount of benefit to Halle Entities is not known.

48. In December, 2008, Halle canceled the Alma coal purchase contract with Pikeville in such a manner as to cause undue financial hardship on the Debtor, impairing the Bankruptcy Estate.

49. After approval by the US Bankruptcy Court of the Settlement Agreement on February 8, 2008, and without written notice of demand for negotiation and endeavor to settle the dispute

by mediation, Halle proceeded to violate the letter and spirit of the Settlement Agreement by

interfering with operation of Alma's mines, both directly and through his proxy – Consol d/b/a

NextGen Coal, through wrongful acts including instituting the following docketed actions in this

Court, and wrongful acts during the associated hearings related thereto, all of which are listed as

examples, and are not intended to include all acts of interference by the Halle Entities:

4/7/08 (docket #286) Objection Filed by Warren E Halle, Kentucky Coal Venture I, LLC, THC
Kentucky Coal Venture LLC (RE: related document(s) 241 Motion to Approve, filed by Debtor
Alma Energy, LLC). (Gartland, Michael) (Entered: 04/07/2008)

5/14/08 (docket #338) Objection Filed by Warren E Halle, Kentucky Coal Venture I, LLC, THC
Kentucky Coal Venture LLC (RE: related document(s) 335 Motion to Approve,, Motion to
Shorten Time, filed by Debtor Alma Energy, LLC). (Attachments: # 1 Continuation of Main
Document Exhibit 1# 2 Continuation of Main Document Exhibit 2) (Gartland, Michael)
(Entered: 05/14/2008)

5/14/08 (docket #339) Affidavit Re: Stephen Fleischman's Support of Objection, filed by Warren
E Halle, Kentucky Coal Venture I, LLC, THC Kentucky Coal Venture LLC (RE: related
document(s) 338 Objection, filed by Creditor Kentucky Coal Venture I, LLC, Creditor THC
Kentucky Coal Venture LLC, Creditor Warren E Halle). (Gartland, Michael) (Entered:
05/14/2008)

5/30/08 (docket #350) Motion to Continue Hearing Scheduled for June 12, 2008, filed by
Warren E Halle, Kentucky Coal Venture I, LLC, THC Kentucky Coal Venture LLC (RE: related
document(s) 331 Disclosure Statement filed by Debtor Alma Energy, LLC). (Attachments: # 1
Proposed Order) (Gartland, Michael) (Entered: 05/30/2008)

6/5/08 (docket #360) Motion for 2004 Examination of Pikeville Energy Group, LLC, filed by
THC Kentucky Coal Venture LLC. (Attachments: # 1 Proposed Order) (Gartland, Michael)
(Entered: 06/05/2008)

6/9/08 (docket #374) Chapter 11 Plan of Reorganization "THC Kentucky Coal Venture I
LLC's Competing Plan of Reorganization Under Chapter 11 of the United States Bankruptcy
Code" Filed by THC Kentucky Coal Venture LLC. (Gartland, Michael) (Entered: 06/09/2008)

6/9/08 (docket #375) Disclosure Statement for Competing Plan of Reorganization Filed by THC
Kentucky Coal Venture LLC. (Gartland, Michael) (Entered: 06/09/2008)

6/9/08 (docket #377) Motion to Approve THC's Disclosure Statement, filed by THC Kentucky Coal Venture LLC (RE: related document(s) 375 Disclosure Statement filed by Creditor THC Kentucky Coal Venture LLC). Hearing scheduled for 6/12/2008 at 02:00 PM at Lexington Ctroom, 3rd Floor.(Attachments: # 1 Proposed Order)(Gartland, Michael)(Entered: 06/09/2008)

6/9/08 (docket #378) Motion to Shorten Notice of Hearing, filed by THC Kentucky Coal Venture LLC (RE: related document(s) 377 Motion to Approve, filed by Creditor THC Kentucky Coal Venture LLC). Hearing scheduled for 6/12/2008 at 02:00 PM at Lexington Courtroom, 3rd Floor. (Attachments: # 1 Proposed Order) (Gartland, Michael) (Entered: 06/09/2008)

6/10/08 (docket #380) Amended Motion to Approve (to include service list), filed by THC Kentucky Coal Venture LLC (RE: related document(s) 377 Motion to Approve, filed by Creditor THC Kentucky Coal Venture LLC). Hearing sch. for 6/12/2008 at 02:00 PM at HNRC Lexington

6/10/08 (docket #382) Objection Filed by Warren E Halle, Kentucky Coal Venture I, LLC, THC Kentucky Coal Venture LLC (RE: related document(s) 241 Motion to Approve, filed by Debtor Alma Energy, LLC). (Attachments: # 1 Continuation of Main Document Exhibit 1) (Gartland, Michael) (Entered: 06/10/2008)

6/10/08 (docket #385) Objection Filed by Warren E Halle, Kentucky Coal Venture I, LLC, THC Kentucky Coal Venture LLC (RE: related document(s) 359 Motion to Approve, filed by Debtor Alma Energy, LLC). (Gartland, Michael) (Entered: 06/11/2008)

06/11/2008 (docket #386) Objection Filed by THC Kentucky Coal Venture LLC (RE: related document(s) 384 Objection, filed by Creditor Nathans Welding LLC, Creditor Nathan Williams, Interested Party Darrell Williams).(Gartland, Michael) (Entered: 06/11/2008)

06/25/2008 (docket #407) THC Kentucky Coal Venture I LLC's Motion for Order Compelling Operator to Install Scale Facilities at Debtor's Mining Site, as Required by Paragraph 3.2 of Interim Mining Agreement and License Agreement filed by THC Kentucky Coal Venture LLC. Hearing scheduled for 7/1/2008 at 10:00 AM at Lexington Courtroom, 3rd Floor. (Attachments: # 1 Proposed Order) (Gartland, Michael) (Entered: 06/24/2008)
06/25/2008 (docket #410) Certificate of Service of Subpoena issued to D. Hayden Fisher on 6/12/08, filed by THC Kentucky Coal Venture LLC. (Gartland, Michael) (Entered: 06/26/2008)

06/25/2008 (docket #411) Certificate of Service of Subpoena issued to Mike Francisco on 6/12/08, filed by THC Kentucky Coal Venture LLC. (Gartland, Michael) (Entered: 06/26/2008)

12/03/2008 (docket #450) Response Filed by THC Kentucky Coal Venture LLC (RE: related document(s) 443 Motion to Limit Notice,, Motion to Dismiss Case,, Motion for Miscellaneous Relief, filed by U.S. Trustee U.S. Trustee). (Barber, T.) (Entered: 12/03/2008)

12/12/2008 (docket #460) Motion to Terminate Mining Operations, filed by THC Kentucky Coal Venture LLC. Hearing scheduled for 12/23/2008 at 02:30 PM at Lexington Courtroom, 3rd Floor. (Attachments: # 1 Proposed Order) (Barber, T.) (Entered: 12/12/2008)

12/31/2008 (docket #481) Motion to Convert Case From Chapter 11 to 7, filed by THC Kentucky Coal Venture LLC Fee Amount 15. Hearing scheduled for 1/21/2009 at 02:00 PM at Lexington Courtroom, 3rd Floor. (Attachments: # 1 Proposed Order) (Gartland, Michael) (Entered: 12/31/2008)

1/05/2009 (docket #484) Supplemental Document *Statement in Support of Motion to Terminate Mining Operations*, filed by THC Kentucky Coal Venture LLC (RE: related document(s) 460 Motion for Miscellaneous Relief filed by Creditor THC Kentucky Coal Venture LLC). (Barber, T.) (Entered: 01/05/2009)

1/06/2009 (docket #487) Notice of Hearing *of Motion for Order Pursuant to 11 U.S.C. Section 1112(b) Converting the Debtor's Chapter 11 Case to a Case Under Chapter 7 of the Bankruptcy Code [Doc. No. 481]* Filed by Kentucky Coal Venture I, LLC (RE: related document(s) 481 Motion to Convert Case from 11 to 7 filed by Creditor THC Kentucky Coal Venture LLC). (Barber, T.) (Entered: 01/06/2009)

1/29/2009 (docket #500) Objection to Confirmation of Plan Filed by Warren E Halle, THC Kentucky Coal Venture LLC. (Attachments: # 1 Continuation of Main Document Exhibits 1-3)(Gartland, Michael) Modified on 1/30/2009 to create document relationship to doc #474 (kfa). (Entered: 01/29/2009)

1/30/2009 (docket #501) Supplemental Document *Regarding Submission of Proposed Order RE Motion of THC Kentucky Coal Venture LLC to Terminate Mining Agreement*, filed by Alma Energy, LLC (RE: related document(s) 460 Motion for Miscellaneous Relief filed by Creditor THC Kentucky Coal Venture LLC). (Attachments: # 1 Proposed Order Proposed Order Regarding Motion to Terminate Mining Agreement) (Snyder, Paul) (Entered: 01/30/2009)

2/2/2009 (docket #510) Objection Filed by Warren E Halle, THC Kentucky Coal Venture LLC (RE: related document(s) 506 Motion to Continue/Reschedule Hearing filed by Debtor Alma Energy, LLC). (Gartland, Michael) (Entered: 02/02/2009)

2/6/2009 (docket #522) Amended Notice of Hearing Filed by Kentucky Coal Venture I, LLC (RE: related document(s) 481 Motion to Convert Case from 11 to 7 filed by Creditor THC Kentucky Coal Venture LLC). (Barber, T.) (Entered: 02/06/2009)

3/5/2009 (docket #543) Motion for Order Authorizing Warren E. Halle and THC Kentucky Coal Venture I LLC to Conduct Rule 2004 Examinations of Integrity Coal Sales, Inc. and Robert Edouard and to Compel Production of Documents in Connection Therewith filed by Warren E Halle, THC Kentucky Coal Venture LLC, (Attachments: # 1 Proposed Order) (Gartland, Michael) (Entered: 03/05/2009)

3/9/2009 (docket #547) Motion for Order Authorizing Warren E. Halle and THC Kentucky Coal Venture I LLC to Conduct Rule 2004 Examination of Alma Energy, LLC and to Compel Production of Documents in Connection Therewith filed by Warren E Halle, THC Kentucky Coal Venture LLC. (Attachments: # 1 Proposed Order) (Gartland, Michael) (Entered: 03/09/2009)

3/10/2009 (docket #550) Motion for 2004 Examination of Pikeville Energy, filed by Warren E Halle, THC Kentucky Coal Venture LLC. (Attachments: # 1 Proposed Order) (Gartland, Michael) (Entered: 03/10/2009)

3/10/2009 (docket #553) Motion for 2004 Examination of Blackberry Energy, LLC, filed by Warren E Halle, THC Kentucky Coal Venture LLC. (Attachments: #1 Proposed Order) (Gartland, Michael) (Entered: 03/10/2009)

3/24/2009 (docket #571) Objection Filed by Warren E Halle, THC Kentucky Coal Venture LLC (RE: related document(s) 570 Motion for Miscellaneous Relief filed by Debtor Alma Energy, LLC, Creditor Pikeville Energy Group, LLC). (Barber, T.) (Entered: 03/24/2009)

4/1/2009 (docket #583) Emergency Motion Seeking An Order Compelling Pikeville Energy Group, LLC to Produce Documents, filed by Warren E Halle, THC Kentucky Coal Venture LLC. (Attachments: # 1 Continuation of Main Document Exhibit A# 2 Continuation of Main Document Exhibit B# 3 Proposed Order) (Barber, T.) (Entered: 04/01/2009)

4/1/2009 (docket #586) Motion Seeking an Order Compelling Alma Energy, LLC and Blackberry Energy, LLC to Produce Documents, filed by Warren E Halle, THC Kentucky Coal Venture LLC. Hearing scheduled for 4/8/2009 at 02:00 PM at Lexington Courtroom, 3rd Floor. (Attachments: # 1 Proposed Order) (Barber, T.) (Entered: 04/01/2009)

4/1/2009 (docket #587) Objection to Confirmation of Plan Filed by Warren E Halle, Kentucky Coal Venture I, LLC. (Attachments: # 1 Continuation of Main Document Exhibit 1# 2 Continuation of Main Document Exhibit 2)(Gartland, Michael) Modified on 4/2/2009 to create document relationship to Amended Plan # 533 (kfa). (Entered: 04/01/2009)

4/6/2009 (docket #590) Objection Filed by Warren E Halle, THC Kentucky Coal Venture LLC (RE: related document(s) 581 Motion to Continue/Reschedule Hearing filed by Debtor Alma Energy, LLC). (Gartland, Michael) (Entered: 04/06/2009)

4/8/2009 (docket #601) Notice of Filing of Filing of Affidavit, Agreement and Other Documents Filed by Pikeville Energy Group, LLC. (Attachments: # 1 Continuation of Main Document Affidavit of D. Hayden Fisher# 2 Continuation of Main Document Proposed Voting Agreement# 3 Continuation of Main Document Schedule A to Proposed Agreement# 4 Continuation of Main Document Examination of Darrell Williams# 5 Continuation of Main Document Affidavit of Troy Francisco) (Lisle, Charles) (Entered: 04/08/2009)

4/10/09 (docket #615) Amended Notice of Hearing Filed by Warren E Halle, THC Kentucky Coal Venture LLC (RE: related document(s) Motion to Convert Case from 11 to 7 filed by Creditor THC Kentucky Coal Venture LLC). (Barber, T.) (Entered: 04/10/2009)

4/26/09 (docket #641) Motion for Authorization to Conduct Rule 2004 Examination of Pikeville Energy Group, LLC, filed by Warren E Halle, THC Kentucky Coal Venture LLC. (Attachments: # 1 Proposed Order) (Gartland, Michael) (Entered: 04/24/2009)

50.  Tony Gannacone III, both individually and on behalf of Consol Capital LLC as a member of the Unsecured Creditors Committee (appointed 11/15/07), as a proxy for Halle, and as part of a single enterprise, with full knowledge and support of the Defendant Jodi Waber, actively opposed reorganization of Alma, through his activity on the Unsecured Creditors Committee, the filing and pursuit of false claims, the submission of false affidavits, and other acts intended to prevent the Debtor from successfully reorganizing. The following examples of actions against the Debtor, individually, as manager for Consol, and as proxy for Halle, are for purpose of illustration and do not include all acts by Consol Capital LLC, Tony Gannacone III, or Jodi Waber:

11/6/2007 (docket #162)   Objection Filed by Consol Captial, LLC, Tony Gannacone, III (RE: related document(s) 73 Motion to Dismiss Case, filed by Creditor Kentucky Coal Venture I, LLC). (Kennedy, Ellen) Modified on 11/7/2007

11/7/2007 (docket #163) See corrective entry #163 (kfa, ). (Entered: 11/06/2007) Corrective Entry PDF document appears to support the motion to dismiss filed 9/13/07 not oppose it as filed in ECF by Ellen Kennedy (RE: related document(s) 162 Objection filed by Interested Party Tony Gannacone, III, Creditor Consol Captial, LLC) (kfa, ) (Entered: 11/07/2007)

01/09/2008 (docket #194)  Objection Filed by Unsecured Creditors Committee (RE: related document(s) 184 Motion to Compromise Controversy under Rule 9019,, Motion to Approve, filed by Debtor Alma Energy, LLC). (kfa) (Entered: 01/09/2008)

01/21/2008 (docket #196)  Supplemental Document *Letter from Unsecured Creditors Committee*, filed by Alma Energy, LLC (RE: related document(s) 173 Memorandum of Opinion,, Order (Generic), Order (Generic)). (Snyder, Paul) (Entered: 01/21/2008)

05/05/2008 (docket #326)  Response Filed by Consol Capital, LLC (RE: related document(s) 278 Objection to Claim filed by Debtor Alma Energy, LLC). (Attachments: # 1 Continuation of Main Document Affidavit of Tony Gannacone III) (Kennedy, Ellen) (Entered: 05/05/2008)

12/28/2008 (docket #51 – Adv 07-7025)  Motion to Dismiss Case, filed by Tony Gannacone III. Hearing scheduled for 1/10/2008 at 02:15 PM at Lexington Courtroom, 3rd Floor. (Attachments: # 1 Continuation of Main Document Exhibit A – Affidavit of Tony Gannaconne III# 2 Continuation of Main Document Exhibit B - Emails - exhibit to MTD# 3 Proposed Order) (Kennedy, Ellen) (Entered: 12/28/2007)

## <u>PARTIAL STATEMENT OF FACTS RELATED TO TORTIOUS CONDUCT</u>

51. Paragraph 4 of the Settlement Agreement (Exhibit A) states that "Halle is relieved of any and all obligations, if any ever existed, to provide any monetary or other investment to KCVI and/or Alma. Alma hereby acknowledges that Halle is neither its partner nor joint venturer, or fiduciary.""

52. Paragraph 5 of the Settlement Agreement states that "Alma shall be fully responsible for any and all past, present or future costs of its operations and shall not look to Halle for payment of any money and/or consideration of any kind."

53. Paragraph 6 of the Settlement Agreement states that "any claims against Alma whether past, present or future shall be the sole responsibility of Alma."

54.  Paragraph 12 of the Settlement Agreement states that "Alma is solely responsible for resolving, paying and/or discharging all claims of the creditors in the Chapter 11 case."

55.  Paragraph 32 of the Settlement Agreement states that "the material terms of this settlement agreement shall be submitted to the bankruptcy court for approval. In the event that the bankruptcy court does not approve such agreement, or this agreement is objected to by the creditors the parties reserve the right to modify the same in a manner reasonably acceptable to each part."

56.  Paragraph 33 of the Settlement Agreement states in pertinent part that "promptly after all parties execute and deliver this agreement, Alma shall file in the Chapter 11 case a Motion to Approve such agreement pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure and take all steps reasonably necessary to obtain entry of a Final Order by the Bankruptcy Court approving such an agreement."

57.  Paragraph 37 of the Settlement Agreement states that "this agreement terminates and replaces all previous oral and/or written agreements between the parties."

58.  Paragraph 40 of the Settlement Agreement states that "Halle hereby acknowledges and agrees that Alma will be the operator with overall management responsibilities for operations and operational control over the mining and sale of the products related to the Right Fork I; Right Fork II (also known as Little Ty); and Netley Properties."

59.  Paragraph 41 of the Settlement Agreement states that "the operator has the authority and power to perform any activity necessary, appropriate, or incidental to the Mining and sale of Products."

60.  Paragraph 42 of the Settlement Agreement states that "Alma hereby agrees to serve as the Operator until it resigns or withdraws, is removed as an Operator following an Alma default as defined herein, or until the Product is exhausted or not economical to extract for a period in excess of 12 months."

61.  In the pleading filed by the Debtor titled "Supplement and Amendment to Motion of Alma Energy, LLC, debtor-in-possession, for Order approving settlement for adversary proceedings Nos. 07-07025 and 07-07032 and related litigation [doc. No. 184] and Notice of Hearing, the debtor states in paragraph 9" KCVI and W. Halle have made it clear that "it is a global settlement or no settlement."  "The Settlement Agreement, as modified by this supplement and amendment, offers Alma and its creditors a one shot opportunity for Alma to resume production and pay a dividend to Alma's unsecured creditors.  Failure to obtain approval of the Settlement Agreement will leave Alma in an extremely vulnerable position, making it unlikely that any creditor, other than KCVI, will receive a dividend on its claims." Neither Halle nor Consol disputed these statements.

62.  On February 8, 2008, the Court approved the settlement agreement, finding that: "the settlements reached in the adversary proceedings are fair and reasonable, in the best interests of creditors, and fall well within the range of potential litigation outcomes."   The Order incorporated the terms of the Settlement Agreement and necessarily contemplated operation of Alma's mines by Alma and/or its contractor, including financing of those operations by third parties, as well as the confirmation of a bankruptcy reorganization plan based on income from those operations.

63.  On March 17, 2008, the owner and management of Alma were introduced to a group of individuals who would later form Pikeville Energy Group, LLC ("Pikeville"), and who met for the purpose of exploring potential investment in Alma based on the apparent economic opportunity and stability created by the Settlement Agreement as approved by this Court.

64.  Pikeville was presented with the Settlement Agreement, and the Court's Order Approving the Settlement Agreement, and relied upon them when considering and ultimately deciding to finance the reorganization of, and provide management and executive consulting services to, Alma as it proceeded with operations under the Settlement Agreement.

65.  Between March 17, 2008 and May 15, 2008, Alma, Pikeville, and Blackberry worked tirelessly to meet and comply with all of the conditions of the Settlement Agreement, including, but not limited to:

(a) preparing the Alma Netley mine to begin producing coal;

(b) acquiring the equipment necessary to commence said mining;

(c) meeting with the Kentucky Department of Natural Resources and securing the permits and other regulatory clearance necessary to commence said mining; and

(d) negotiating a purchase order for the coal for $64 per merchantable ton, to be produced at the Alma mines by Blackberry, the contract miner for Alma coal; sold to Pikeville, the coal purchaser; and re-marketed to third-party coal purchasers.

66.  During April and May of 2008, Alma, Blackberry and Pikeville met with a number of potential buyers of the coal to be produced at the Alma mines, and entered into a contract with Appalachian Fuels LLC whereby Appalachian Fuels would advance $300,000 to offset mining start-up costs and agree to purchase the coal produced at the Alma mines on a direct ship and non-washed basis for approximately $85 per merchantable ton. This agreement was particularly advantageous to Alma, Blackberry, and Pikeville insofar as Appalachian Fuels was operating a surface mine several hundred yards from the Alma mines, thereby allowing Pikeville to eliminate the trucking and shipping costs associated with the sale of the coal mined at the Alma mines.

67.  By early May of 2008, Pikeville had acquired all the equipment necessary to mine coal at the Alma mine; the mines had been prepped, permitted and cleared by all regulatory bodies to begin production; and an economically viable purchase order had been obtained that could have ensured a long-term stream of income to the Debtor for the benefit of Creditors, as well as for Pikeville and Blackberry.

68.  Prior to mining the Debtor filed a Motion with the Court to approve the commencement of mining.  Time was of the essence given the significant labor costs associated with the large crew that had been employed to mine the property, and said Motion was brought on an emergency basis. Neither Alma, Pikeville, or Blackberry anticipated an objection being filed to the Motion, as all parties-in-interest had previously recognized that production of coal was necessary to preserve assets of the Bankruptcy Estate and to allow for payment of claims.

The filing of the objection was *per se* a violation of the Settlement Agreement, which provided

for mechanisms to resolve disputes as to operations under the agreement.

69.  In violation of the letter and spirit of the Settlement Agreement, the Halle entities

filed an objection to the Motion to commence mining under the terms of the Settlement

Agreement. In the objection, without having made reasonable inquiry into their truth, Halle

presented false factual allegations to the Court with no reasonable basis to believe the statements

to have been true, including but not limited to:

    a.   That Alma had not secured the necessary permits and other regulatory clearance

    to commence mining when, in fact, it had done so;

    b.   That Pikeville was owned by Creditors Committee Chairman Tony L. Francisco

    and was not an independent party when, in fact, Francisco did not hold any interest in

    Pikeville;

    c.   That Pikeville had not invested well over $1,000,000 to purchase equipment and

    prepare the Alma mines to commence mining when, in fact, it had done so;

    d.   That Nathan Williams was not a coal miner, when he had been the Controller on

    the mining permits and when he was in fact a licensed coal miner.

    e.   That Alma's management was "permit blocked" so as to prevent approval of

    mining by the Department for Natural resources, when in fact Alma had hired an

    experienced coal mining executive, Harold Meek, to the satisfaction of Kentucky

    Department of Natural Resources.

70.  Halle and his attorney Shelton knew that Alma was fully prepared, licensed, and

capable of commencing production, having acknowledged the same by execution of the

Settlement Agreement, and knowingly filed false statements in opposition to commencement for

the purpose of causing economic damage to the Debtor, the Bankruptcy estate, and Creditors of the Debtor.

71.  The false factual allegations presented in the objection were intentionally made to the Court by Halle without a reasonable basis to believe the statements to have been true, and could have been easily determined by Halle to have been false through inquiry directed to the Commonwealth of Kentucky Department for Natural Resources, Commonwealth of Kentucky Secretary of State's Office, and the Debtor.

72.  The Court held a hearing on the Debtors' Motion on May 15, 2008, during which the Halle Entities repeated the misrepresentations and misinformed the Court as to the true status of Alma's mines. Not anticipating the objection of the Halle Entities nor the breadth of the false statements presented at the hearing, neither Pikeville nor Creditors supporting the Debtor were represented by counsel at the hearing. At the conclusion of the hearing, the Court denied Alma's motion and instructed the parties to attempt to work out their differences.

73. Immediately after the hearing Darrell Williams approached counsel for the Halle Entities, Mr. Gartland, and Stephen Fleishman, Vice President of the Halle Entities; pointed to Mr. Gary Richard, the principal investor in Pikeville Energy LLC; and stated to them that Mr. Richard had invested more than 1.5 million dollars into the Alma project. Michael Gartland, walked over to Mr. Richard, "got very close physically", pointed at him, and said, "well, you are going to lose every penny of that investment, we're taking that money.  Thanks a lot for your contribution to our project."

74.  Nevertheless, in order to resolve the dispute, the principals of Alma, Blackberry and Pikeville agreed to meet with Warren E. Halle at the Blue Grass Airport, TAC general aviation executive terminal, where the Halle representatives had flown to attend the hearing.

75.  In an attempt to satisfy the demands of Halle so that production could start, Alma and Pikeville offered to sell the coal mined at the Alma properties to the Halle Entities. At one point during the negotiations, Mr. Halle personally threatened Mr. Darrell Williams life if Mr. Williams "messed up" the deal, stating that he would have Mr. Williams killed by "paying a coal truck driver to run him over."

76.  At another point during the negotiations, having cornered Mr. Richards, principal of Pikeville, while Mr. Williams was outside smoking, Mr. Halle and Vice-President Fleischman made disparaging comments about Alma, Darrell Williams, and his son Nathan Williams, including telling Mr. Richard that Mr. Williams was a thief and that he received kick-backs from all of the equipment he purchased on behalf of Pikeville, and encouraged Mr. Richard to abandon his investment in the Alma project.

77.  The Alma mines remained idle and the labor / maintenance costs associated therewith averaged more than $100,000 per week. The Court scheduled a hearing on the issue of whether Alma and Blackberry could begin producing and selling coal to Pikeville. Taking advantage of the precarious financial position this caused, the Halle Entities attempted to coerce Alma, Blackberry and Pikeville into entering into an egregious coal purchase contract with them.

78. During the week of May 20, 2008, Alma, Blackberry, and Pikeville engaged in intensive negotiations with the Halle Entities and exchanged multiple drafts of coal purchase agreements. Efforts by Alma and Pikeville to remove language proposed by the Halle Entities that might be used to the detriment of the bankruptcy estate were rebuffed by Halle.

79.  On Monday, May 20, 2008, Mr. Gartland stated in an e-mail to Alma that if Alma, Blackberry, and Pikeville did not agree to enter into the contract presented by the Halle Entities, the Halle Entities would file a competing plan and "wipe out the equity of the company."  The

ultimatum to agree to the contract as drafted by Halle or face a competing plan was in direct violation of the letter and spirit of the Settlement Agreement.

80. In another e-mail dated May 19, 2008, Halle Company Vice President Fleischman advised Alma, Blackberry, and Pikeville that if they did not enter into the coal purchase agreement presented by the Halle Entities by 12:00 p.m. on Friday, May 27, 2008, the Halle Entities would in fact file a competing plan. This demand was a clear violation of the Settlement Agreement, and an obvious attempt to wipe-out the equity of Alma and expropriate the investment of Pikeville, fulfilling the intention expressed by Mr. Gartland in the lobby of the courthouse following the May 15, 2008 hearing.

81. Alma, Blackberry, and Pikeville rejected the unfavorable coal purchase agreement presented by the Halle Entities, and the Halle Entities did in fact file a Competing Plan of Reorganization.

82. Prior to the June 5, 2008 hearing, the Court held a hearing on the Motion of the Halle Entities request to send the competing disclosure statement and plan of re-organization to parties-in-interest for approval at the same time as the Debtor's Plan. Attorney Ellen Kennedy represented the Unsecured Creditors Committee during this hearing, and to a significant degree supported the Halle Entities.

83. In a Bankruptcy Rule 2004 examination of the Defendant, Tony Gannacone III, stated that Consol Capital LLC does business under the fictitious name NextGen Coal, and that the corporate office of Consol Capital LLC d/b/a NextGen Coal as shown on the company's web page is 2900 Linden Lane, Suite 300 Silver Spring, Maryland, the same address as the Halle Entities.

84.   The direct connection between Warren E. Halle and Consol Capital LLC d/b/a NextGen Coal was verified by testimony of a Robert Edouard, an employee of Integrity Coal Sales, a company that purchases coal processed by Halle's Glen Alum WV coal preparation plant. In Mr. Edouard's testified in a 2004 examination that NextGen and Halle are "synonymous". He further testified that he had never heard of Kentucky Coal Venture I LLC; THC Kentucky Coal Venture I LLC; West Virginia Coal Venture I LLC; or KWV Operations LLC, stating that "Next Gen is who we have the contract with."

85. Prior to the hearing, Gannacone, acting on the Unsecured Creditors Committee as proxy for the Halle Entities, attempted to influence and persuade counsel for the Committee, Ms. Kennedy, to support the Halle Entities, even though the goal of their Motion was to "wipe-out the equity" of Alma and effectively destroy the Settlement Agreement. The Court denied the Motion.

86. Alma proposed to pay unsecured creditors 100% of their claims, Halle proposed payments of cents on the dollar. Gannacone's support of the Halle Entities violated his fiduciary duty as a member of the Unsecured Creditor's Committee to further the interests of unsecured creditors. Gannacone and Halle's failure to disclose that NextGen was "synonymous" with Halle, that Gannacone was acting as a proxy of Halle, and that Gannacone's individual positions benefited Halle at the expense of unsecured creditors, represents a fraud on this Court by Tony Gannacone III and by Warren E. Halle, and violates statutory provisions of USC Title 11 and Title 18.

87.   On June 12, 2008, the Court held a hearing on whether to approve the Interim Mining Agreement proposed by Alma.  Again, even though the Interim Mining Agreement would, and in fact did, produce substantial income for the secured and unsecured creditors, Mr.

Gannacone, acting as proxy for Halle both individually and as Consol, vehemently urged Ms. Kennedy to oppose the Motion by Alma to approve the Interim Mining Agreement.

88.  The Halle Entities, through their surrogate Mr. Gannacone, improperly manipulated the unsecured creditors committee to the detriment of Alma, Blackberry, Pikeville, Darrell Williams, Nathan Williams, and the Creditors, and to the benefit of the enterprise consisting of the Halle Entities, including the Defendant Consol Capital LLC.  Gannacone and Halle's failure to disclose that NextGen was "synonymous" with Halle, that Gannacone was acting as a proxy of Halle, and that Gannacone's individual positions benefited Halle at the expense of unsecured creditors, all in furtherance of Gannacone's actions for the benefit of Halle, represent fraud on this Court by Tony Gannacone III and by Warren E. Halle, and violate statutory provisions of USC Title 11 and Title 18.

89. The Court recognized the benefit of the Interim Mining Agreement to Alma, Blackberry, Pikeville, and the Creditors, and the right of Alma under the Settlement Agreement and the Bankruptcy Code to be given the opportunity to reorganize, and approved the Settlement Agreement.

90.  During the period from May 15, 2008, through June 12, 2008, Alma, Blackberry, and Pikeville suffered damages totaling in excess of $1,000,000, resulting from the labor costs associated with the idle Alma mines and the loss of coal sales, to the detriment of the Debtor and the Bankruptcy Estate.

91.  Having the approval of the Court to commence mining, Pikeville resumed negotiations to obtain a third-party coal purchase order for the benefit of Alma. Halle originally purchased the Glen Alum WV plant and coal reserves from a subsidiary of Appalachian Fuels LLC, and therefore had and has a close relationship with that company. Shortly after the May 15,

31

2008 hearing, Mr. Halle called Mr. Bernie Mason, a senior executive of Appalachian Fuels, and attempted to persuade Mr. Mason not to purchase coal mined at the Alma mines. This interference resulted in Appalachian Fuels being unwilling to complete the contract to advance $300,000 in start-up mining costs associated with the Alma mines as it previously had agreed. Without these funds, the Little Ty and Right Fork mines could not be economically restarted.

92.   The Halle Entities made it clear to Alma that they would make it physically and economically difficult or impossible for Alma and Pikeville to sell its products to anyone other than Halle. Subsequent to approval of the interim mining agreement, Halle again approached Alma and Pikeville in an effort to acquire the right to purchase the coal to be mined at the Alma mines. After some negotiations, Pikeville entered into an agreement with the Halle Entities on June 30, 2008, to sell the coal produced at the Alma mines to Halle at $127.50 per clean ton.

93. Again Halle used economic coercion to dictate the terms of the coal purchase agreement, which violated both the spirit and the letter of the Settlement Agreement. Alma, Blackberry, and Pikeville produced and sold coal to the Halle Entities under this agreement between July 1, 2008, and late November of 2008, when the Halle Entities abruptly terminated the coal purchase agreement without notice, in violation of an express term that required a 30 day notice.

94.   Halle contended that he could terminate the coal purchase agreement with Pikeville on the basis that the ARNU (rate of shrinkage of coal) specification in the contract had not been met. Pikeville disputed this contention.  Subsequent thereto, Alma, Blackberry and Pikeville learned in the 2004 examination of Mr. Edouard that the end purchaser of the coal, Integrity Coal, did not have an ARNU specification in its contract and had never rejected any of the coal produced by Alma and Blackberry and sold by Pikeville to the Halle Entities.

95.  Under the coal purchase agreement between Halle and Pikeville, sampling and testing necessary to determine the "rejection rate" of the raw coal shipped from the Alma mines to the Halle Entities' Glen Alum, West Virginia, processing plant was conducted by two independent laboratories. The Halle Entities used Gilbert Testing and Pikeville used Mineral Labs. Under the agreement the ash percentages returned by these two labs were averaged, and the averaged percentage was used to determine the number of clean tons delivered to the Halle Entities. Throughout the agreement, Gilbert Testing consistently returned ash percentage results higher than those returned by Mineral Labs, resulting in an overall higher average reject rate that was then utilized to calculate the number of clean tons delivered by Pikeville. The end result was that Alma received less money for the benefit of Creditors than it would have received had Halle's lab number been similar to Pikeville's.

96. Subsequent investigation into the discrepancies by Alma, Blackberry, and Pikeville revealed that Gilbert had been instructed to employ a testing and sampling methodology that would result in higher ash percentages than would be obtained using the presumed contract method. The Halle Entities specifically instructed Gilbert to employ a testing and sampling methodology that resulted in additional bankruptcy estate funds paid to the Halle Entities.

97. The Halle Entities were fully aware that cancellation of the coal purchase agreement between them and Pikeville, without prior notice and in the midst of a significant market downturn, would be the proximate cause of severe economic consequences to Alma, Pikeville, and Blackberry, and threaten the viability of Alma's reorganization plan to the detriment of Creditors. The unlawful termination was specifically calculated to cause this harm, as the Halle Entities continued to sell coal produced at their mines. Had Halle been acting in good faith, Halle

33

would have renegotiated the purchase price with Pikeville and Alma rather than economically

strangling the Debtor and its Creditors.

98.  Following the termination of the coal purchase agreement between Halle and

Pikeville, the Halle Entities promptly resumed their efforts to prevent Alma from confirming a

plan of reorganization, allowing the Halle Entities an avenue to fulfill their ultimate goal of

expropriating the investment of Pikeville and the Alma mines in violation of the Settlement

Agreement, all to the detriment of creditors. The Halle Entities simply had no right or

justification under the letter and spirit of the Settlement Agreement to file any of the Motions,

Objections, or competing Plans.

99.  Following the termination of the coal purchase agreement between the Halle Entities

and Pikeville, Pikeville began searching for alternative coal purchase orders for Alma's benefit.

Upon learning of negotiations with Integrity Coal Sales, the Halle Entities, through their attorney

Mr. Gartland and their Vice President, Steve Fleischman, interfered with those negotiations for

the purpose of preventing Pikeville from securing a coal purchase order for the benefit of the

Bankruptcy Estate.  At the instigation of Tony Gannacone, Mr. Gartland and Stephen

Fleischman called Robert Eduardo of Integrity Coal, and represented to him that Alma was

dragging Integrity into a legal proceeding and lawsuit. Mr. Eduardo later stated to Darrell

Williams – "I, I think what we probably need to do is to concentrate on maybe making this thing

go away, uh, before we go forward." …"we just don't want to get dragged into this, uh, this

going back, and forth thing here with, with you and Consol… Capital."… "And uh, I'll see what

he has to say, but, you know, I, I don't know if he's going to be too positive on that thing with

this pending thing being out here." …How do we go forward doing business when we got this

cloud over our heads?"

## COUNT I -  FRAUD IN THE INDUCEMENT

100. The Plaintiff hereby affirms, adopts, and incorporates the previous allegations.

101. The Halle Entities offered promises, representations, assurances and inducements to Alma, Darrell Williams and Nathan Williams, set forth within the Settlement Agreement, to induce them to abandon their claims in adversary proceedings 07-1025 and 07-1033, and in the Pike Circuit Court, and enter into the Settlement Agreement.

102. Specifically, Warren E. Halle and the Halle Entities made promises, representations, assurances and inducements including, but not limited to those contained in the Term Sheet by Halle and incorporated in the Settlement Agreement:

[1] "The parties resolve any and all disputes that have arisen among them."

This represents promises, representations, assurances and inducements that any and all disputes between Warren E. Halle and Halle Entities and Alma have been resolved, and that Halle will operate the West Virginia properties without any intervention by Alma and Alma will operate the Kentucky properties without any intervention by Warren E. Halle, Halle Entities, or Gannacone acting as a proxy of Halle, individually or by and through Consol. Halle has continued to actively pursue and prosecute in this Court "disputes that have arisen among them."

[2] "Alma will be solely responsible for resolving, paying and/or discharging all claims of the creditors in its Chapter 11 Case."

This represents promises, representations, assurances and inducements by Warren E. Halle and Halle Entities that Halle will not interfere or oppose in any way Alma's plan of reorganization for the purpose of resolving, paying and/or discharging all claims of the creditors in its Chapter 11 Case, Alma being the sole entity responsible for

doing so. Being solely responsible for its Chapter 11 Case necessarily promises, represents, and assures Alma that Halle will not seek conversion of Alma's case to Chapter 7, will not object to Alma's plan of reorganization, and will not present an alternative plan that prevents Alma from resolving, paying, and/or discharging all claims. Halle, acting directly and through Consol, has sought to convert Alma to Chapter 7, opposed Alma's Plans of Reorganization, proposed a Creditor's plan that prevents Alma from reorganizing, and in general sought to expropriate the Assets of the Bankruptcy Estate and pay unsecured creditors nothing.

[3] "THC or its designee will be paid a specific royalty."

This represents promises, representations, assurances and inducements by Warren E. Halle and Halle Entities that Halle will not interfere in Alma's sale of coal so long as a royalty is paid. Halle has caused the royalty to be greater than stated and has sought to prevent Alma from selling coal to third parties. Had Halle disputed the amount or calculation of the royalty it was obligated to do so under the terms of the Settlement Agreement, and was barred from opposing mining by Alma under those same terms.

[4] "If Alma washes its coal at Glen Alum, with the price charged to wash the coal subtracted from the ultimate gross sales price and the royalty will be calculated on the difference only."

This represents promises, representations, assurances and inducements by Warren E. Halle and Halle Entities that Halle will make a good faith business decision regarding whether or not Alma is allowed to wash coal at Glen Alum and will correctly charge for washing said coal. The inclusion of the paragraph by Halle can only be interpreted as having meaning if Halle is not free to arbitrarily refuse to process coal

produced at Alma's mines. In fact Halle has failed to act in good faith, repeatedly refusing to process Alma's coal unless Halle is allowed to purchase the coal on terms favorable to Halle and detrimental to the Debtor and its Creditors. In fact Halle informed an existing customer of the Glen Alum plant that he would no longer do business with him if he purchased coal from Alma or Pikeville.

[5] "All coal sales proceeds will be deposited with a mutually agreed upon escrow agent who will be responsible for the payments set forth herein."

This represents promises, representations, assurances and inducements by Warren E. Halle and Halle Entities that Halle will act in such a manner as to allow Alma to utilize the escrow agent and will accept the escrow agent's standard reports and accounting methods. Halle has manipulated payments so as to make it impossible to utilize the escrow agent and has objected to standard accounting procedures utilized by the accountants.

[6] "The only paperwork requirement will be for Alma and/or Alma's Operator to provide to THC basic documentation confirming coal production and coal sales and payment of all government mandated charges, all taxes and all royalties."

This represents promises, representations, assurances and inducements by Warren E. Halle and Halle Entities that they will not require additional paperwork that places a burden on Alma's limited resources. In fact Halle has demanded vast amounts of data beyond "the basic documentation" he agreed to accept. Halle has insisted that the Court require Alma, Pikeville, and Blackberry to produce extensive records; has demanded that the UST require Alma to produce far more than "the basic documentation"; has scheduling 2004 examinations that seek production of massive

amounts of paperwork, including emails and receipts; and in general have sought

voluminous paperwork with the intention of creating an extreme financial burden on

Alma, Pikeville, and Blackberry.

[7] "Nathan J. Williams will also be allowed to pursue his claim for $500,000.00

(Claim No. 18) filed in the Chapter 11 Case without objection by Halle or any Halle

Entity."

This represents promises, representations, assurances and inducements by

Warren E. Halle and Halle Entities that the unsecured claim will have some value,

otherwise the inducement would be illusory and worthless from the start. For the claim to

have value the Debtor must be allowed to reorganize and must not be forced into Chapter

7 liquidation by Halle's actions, including delay in commencement of mining and

interference of any kind to Alma's reorganization. Halle has interfered with Alma's

reorganization and attempted to force Alma into liquidation from the date the Settlement

Agreement was approved by this Court.

[8] "The lawsuit currently pending in the Pike County Court, Case No. 07-C1-

00910 (the 'Pike Action'), will be settled and dismissed with prejudice and without costs

on a confidential basis in exchange for a $120,000.00 check from THC."

This represents promises, representations, assurances and inducements by

Warren E. Halle and Halle Entities that the check would be promptly paid to Alma,

without conditions, in fact it was not.

[9] "The Settlement Agreement terminates and replaces all previous oral and

written agreements between the parties."

This represents promises, representations, assurances and inducements by

Warren E. Halle and Halle Entities that what is said is true as promised - all previous oral and written agreements between the parties are terminated – including, among other agreements, the agreement to assign leases. Halle refuses to honor the clear language of this promise, representation, assurance, and inducement.

[10] "If the market price for coal goes below $60 per ton, the mines may close and go idle until the market price of coal increases to above $60 per ton.  The time of closure shall start when coal stops being produced as it was prior to the time of closure. The time period that the mines are idle shall not exceed twelve (12) consecutive months."

This represents promises, representations, assurances and inducements by Warren E. Halle and Halle Entities that if coal is below $60 per ton, Halle will do nothing to prevent or oppose Alma closing and idling mines. Coal prices are below $60 a ton, and Alma has idled the mines. In direct violation of the Settlement Agreement, Halle has argued vehemently to this Court that Alma should be given no additional time to remain idle, and must have a contract to reopen the mines after only four months of being idle.

[11.] "Halle is relieved of any and all obligations, if any ever existed, to provide any monetary or other investment to KCVI and/or Alma. Alma hereby acknowledges that Halle is neither its partner, joint venture or fiduciary."

This represents promises, representations, assurances and inducements by Warren E. Halle and Halle Entities that Alma is completely independent from Halle and requires that Halle will not meddle in the business of the Debtor. Halle has in fact micromanaged Alma, seeking the smallest details about Pikeville, Alma, and Blackberry income, expenses, employees, ownership, etc.

[12.] "Alma shall be fully responsible for any and all  past, present and future

costs of its operations and shall not look to Halle for payment of any money and/or consideration of any kind."

This represents promises, representations, assurances and inducements by Warren E. Halle and Halle Entities that Alma will be allowed to pursue third party financing and sale of assets with the Court's approval. Halle has interfered with Alma's investors and potential investors, engaged in actionable trade libel, sought to increase the cost of doing business, sought to force Pikeville and recent additional investors to stop supporting Alma, inquired into unrelated business ventures of Alma's associates, and in general strangled Alma's cash flow.

[13] "Halle hereby acknowledges and agrees that Alma will be the Operator with overall management responsibility for Operations and operational control over the Mining and sale of Products related to the Right Fork I; Right Fork II (also known as Little Ty); and Netley Properties. Alma is solely responsible for resolving, paying and/or discharging all claims of the creditors in the Chapter 11 Case. Any claims against Alma whether past, present, or future shall be the sole responsibility of Alma."

This represents promises, representations, assurances and inducements by Warren E. Halle and Halle Entities that Alma will be left alone to operate its business and execute a successful reorganization. In fact Halle and Halle's proxy, Consol, have consistently sought to prevent Alma from operating its business and reorganizing. Halle has opposed mining agreements, argued against mining plans, sought conversion to Chapter 7, filed competing plans, and otherwise harassed Alma and its associates.

[14.] "The Operator has the authority and power to perform any activity necessary, appropriate, or incidental to the Mining and sale of Products."

This represents promises, representations, assurances and inducements by Warren E. Halle and Halle Entities that Alma can act without interference in the day to day operations of its business. In fact Halle has interfered with Alma's operations, seeking detailed records of every activity, alleging misconduct with absolutely no proof, interfering with potential customers and investors, and in general usurping and interrupting activities necessary, appropriate, or incidental to the Mining and sale of Products.

[15.]  "If a dispute under this Agreement has not been resolved by negotiation between the Parties within ten (10) days after delivery of a written notice of demand for negotiation, the Parties shall endeavor to settle the dispute by mediation under the CPR Mediation Procedure then currently in effect."

This represents promises, representations, assurances and inducements by Warren E. Halle and Halle Entities that Halle will negotiate in good faith with Alma. In fact Halle has not been willing to negotiate, even when presented with written demands by email, and has repeatedly gone to US Bankruptcy Court for resolution of disputes in complete violation of the terms of the Settlement Agreement. Specific instances of actions in the US Bankruptcy Court in violation of the terms of the Settlement Agreement are stated herein, and include opposition to the Debtor's Motions to commence mining and the filing of a competing plan.

It should be remembered that Halle is a competitor of Alma. Halle, Consol, and the UCC are the only "creditors" that have actively opposed Alma's plans. If Halle is successful in obtaining conversion of the case, it is possible that unsecured creditors will receive nothing.

103. The Halle Entities never intended to perform under the Settlement Agreement, and harbored a present intent not to perform under the Settlement Agreement at the time that they entered into it.

104. Alma, Darrell Williams, and Nathan Williams, as parties to the Settlement Agreement, contemplated that it would be tantamount to a divorce between the Halle Entities and Alma, Darrell Williams, and Nathan Williams, where Alma would owe no further obligations to the Halle Entities other than to pay "royalties" to THC Kentucky Coal Venture I LLC on coal produced and sold at the Alma mines; to operate the Alma mines, comply with all legal and regulatory requirements; and provide documentation concerning coal production at the Alma mines.

105. Soon after the execution of the Settlement Agreement, the attorney for the Halle Entities, Mr. Gartland, stated to the public that the Halle Entities would take over Alma within months.

106. Alma, Darrell Williams, Nathan Williams, and Nathan's Welding would not have released the Halle Entities from the $100,000,000 in claims stated in the adversary proceeding and in other lawsuits had it known that from before the date of execution of the Settlement Agreement, the Halle Entities did not intend to perform under the terms of the Settlement Agreement.

107. Acting on the promises, representations, assurances and inducements above stated, and in justifiable reliance thereon, the Debtor, Darrell Williams, Nathan Williams, and Nathan's Welding entered into the Settlement Agreement.

108. The Halle Entities made the representations above stated knowing them to be false,

or with reckless disregard to the truthfulness or falsity, with the intent to induce the Plaintiff ,
Darrell Williams, Nathan Williams, and Nathan's Welding to rely on them by executing the
Settlement Agreement and having it approved by this Court.

109. The Halle Entities breached the terms of the Settlement Agreement for the sole and
malicious purpose of attempting to take over the Alma mines in violation of the letter and spirit
of the Settlement Agreement, all to the detriment of Creditors of Alma.

110.  The representations and terms cited above were material to Alma, Darrell
Williams, Nathan Williams, and Nathan's Welding's decision to enter into the Settlement
Agreement and, in the absence of said representations, Alma, Darrell Williams, Nathan
Williams, and Nathan's Welding would not have entered into the Settlement Agreement.

111.  The Defendant Halle Entities' representations as to the actions Halle would take in
the future were made with the contemporaneous present intent not to perform those actions and
with the contemporaneous present intent to induce Alma Darrell Williams, Nathan Williams, and
Nathan's Welding to execute the above-described written contracts.

112. Alma, Darrell Williams, Nathan Williams, and Nathan's Welding, did not know the
representations of the Halle Entities that induced them to enter into the Settlement Agreement
were false, and had no reasonable independent means of determining their truthfulness or falsity.
 Alma, Pikeville, Darrell Williams, Nathan Williams, and Nathan's Welding reasonably relied
upon the misrepresentations of the Halle Entities.

113. The Halle Entities executing the Settlement Agreement misrepresented that they
had authority to enter into the Settlement Agreement for the reason that the Glen Alum, West
Virginia coal property and processing plant are, according to NextGen Coal's website, owned or
controlled by Consol Capital, LLC, doing business as "NextGen".  Accordingly, the Halle

Entities signing the Agreement lacked authority to enter into the Settlement Agreement, rendering it void *ab initio*.

114. As a direct and proximate result of the detrimental reliance by Alma, Darrell Williams, Nathan Williams, Nathan's Welding, upon the representations of the Halle Entities - Alma, Darrell Williams, Nathan Williams, Nathan's Welding, Blackberry Energy, and Pikeville Energy have sustained pecuniary injury in the form of loss of the valuable claims they alleged within the adversary proceeding and the future profits they would have realized from the operation of the Glen Alum, West Virginia coal property and processing plant. These damages exceed several hundred million dollars and will be proved at trial, and a claim of right by the Debtor to operate the Glen Alum facility.

115. That as a direct and proximate result of the willful and malicious fraudulent conduct set out above, the Plaintiff is entitled to punitive damages. Given the collective net worth of the Halle Entities, the punitive damages awarded herein must be substantial in order to punish these defendants and deter them and others from entering into similar future tortious and unlawful conduct.

116. That because of the fraudulent inducement committed by the Halle Entities, the Settlement Agreement must be declared void *ab initio*, and Alma, Darrell Williams, Nathan Williams, Nathan's Welding, must be permitted to prove and recover in this lawsuit the value of the claims they released.

117. Furthermore, the Halle Entities perpetrated fraud upon this Court:

(a) by acting through proxies Consol Capital LLC and Tony Gannacone III to defeat the letter and spirit of the Settlement Agreement and the Order entered by this Court on February 08, 2008, approving the Settlement Agreement;

(b) by attempting to circumvent the Court's Order through a proposed Voting Agreement with Pikeville; and

(c) by otherwise informing the Court that it was acting in furtherance of the Court's Order while in fact intentionally violating the Order of this Court through a single enterprise consisting of KCVI, KCVII, WVCVI, KWV, CONSOL d/b/a NextGen Coal, WABER, GANNACONE, UNNAMED DEFENDANTS associated with Warren E. Halle, and WARREN E. HALLE.

The conduct of the Defendant's KCVI, KCVII, WVCVI, KWV, CONSOL d/b/a NextGen Coal, WABER, GANNACONE, UNNAMED DEFENDANTS associated with Warren E. Halle, and WARREN E. HALLE constitutes both fraud on this Court, entitling Alma to relief from said Order under FRCP 60(d) (1) and (3), and an unusual and extreme situation where principals of equity mandate relief under FRCP 60(b) (6).

118. Conduct of the Halle Entities to defeat the Settlement Agreement and the Order entered by this Court approving the Settlement Agreement, entitle Alma to an Order declaring that the Settlement Agreement is void *ab initio* and that the Order Approving entered February 08, 2008, is vacated under FRCP 60(b) (4) and (6).

## COUNT II - TORTIOUS INTERFERENCE

119. The Plaintiff hereby affirms, adopts, and incorporates the previous allegations.

120.  Alma and its stakeholders possessed at all relevant times a bona fide and ongoing interest in mining and selling coal at the Alma mines.

121. Subsequent to execution of the Settlement Agreement, Alma entered into negotiations with Pikeville to invest in Alma and assist with management of the affairs of the company in order that it could operate as a profitable going concern.

122. The relationship between Alma, Pikeville, Nathan Williams, and Darrell Williams included opportunities unrelated to the Alma mines that depended upon the success of the Alma mines.  Specifically, these included the acquisition of other coal properties and mining rights; the acquisition of other mineral rights; and, ultimately, real estate development opportunities.

123.  Alma, Pikeville, Nathan Williams, and Darrell Williams entered into contracts to acquire additional coal properties and mining rights; other mineral rights; and real estate for development.  These opportunities have been forecasted to yield hundreds of millions of dollars in profits, and Alma, Pikeville, Nathan Williams, and Darrell Williams stood to benefit significantly from the opportunities.

124.  The Halle Entities interfered with the relationship and contracts between Alma and Pikeville by slandering and disparaging Alma, Pikeville, Nathan Williams, and Darrell Williams and falsely depicting them as being inherently untrustworthy and crooked.  These comments had no basis in fact or law and were uttered for the sole and malicious purpose of attempting to interfere with the valuable business relationship forged between these parties and third parties.

125.  The Halle Entities interfered with Alma's rights under the Settlement Agreement to mine and sell the coal at the Alma mines by filing repeated objections and motions to the Interim

46

Mining Agreement, the disclosure statements of Alma and its plans for re-organization, and

other baseless and frivolous pleadings calculated to frustrate Alma's ability to perform and

succeed under the Settlement Agreement and Plan of Reorganization for the benefit of Alma,

Blackberry, Pikeville, and the Creditors.  These efforts included the surreptitious inclusion of

surrogate and Halle insider, Tony Gannacone III, on the Unsecured Creditors' Committee for the

purpose of frustrating Alma's opportunity to succeed and perform under the Settlement

Agreement.  Mr. Gannacone consistently urged the attorney for the creditors' committee to

oppose Alma's efforts to return to mining coal for the benefit of Alma, Blackberry, Pikeville and

every other Creditor.  No creditor other than the Halle Entities and their conspirator, Mr.

Gannacone, opposed Alma's efforts to resume mining at the Alma mines.

126.  Alma, Nathan Williams, Darrell Williams, and Nathan's Welding, as parties to the

Settlement Agreement, had a bona fide and ongoing contractual and business relationship

directly with Blackberry and Pikeville, and indirectly with Alpha Natural Resources,

Appalachian Fuels and Integrity Coal.  The Halle Entities interfered with the contractual and

business relationships between Alma and these parties.

127.  The Halle Entities knew of the bona fide contractual and business relationships

between Alma, Darrell Williams, Nathan Williams, and Blackberry, Pikeville, Appalachian

Fuels, Alpha Natural Resources, and Integrity Coal. The Halle Entities knew that Alma and

Darrell Williams, and Nathan Williams, had a reasonable expectation of economic gain resulting

from the above-stated relationships.

128. The Halle Entities, in the manner set out previously in this Complaint, induced

Integrity Coal and Appalachian Fuels not to do business with Alma and Pikeville, on February 5,

2008 with respect to Integrity Coal and in May of 2008 with respect to Appalachian Fuels. The

Halle Entities induced other known and as of yet unknown companies not to do business with Alma and Pikeville.

129.  By their acts set forth above the Halle Entities have interfered in the contractual and business relationships between Alma, Darrell Williams, Nathan Williams, Blackberry, Pikeville, Integrity Coal, Appalachian Fuels, Alpha Natural Resources, and other as of yet unknown entities.

130.  The Halle Entities induced Integrity Coal, Appalachian Fuels and Alpha Natural Resources, among others, to refrain from entering into a coal purchase agreement with Alma and Pikeville to the detriment of Alma, Blackberry, Pikeville and the creditors in derogation of the Settlement Agreement and the rule of law.

131. The Halle Entities interfered with the contractual and business relationships between these parties, as alleged herein, with malice, without legal justification or privilege, and with the express intent to interfere with those relationships to cause the destruction of, or harm to, said relationships.

132.  The Halle Entities conduct was the proximate cause of the destruction of, or injury to, these relationships.

133.  As a direct and proximate result of the Halle Entities' interference with Alma, Darrell Williams, Nathan Williams, Blackberry, and Pikeville's contractual and business relationships with each other and with Integrity Coal, Appalachian Fuels and Alpha Natural Resources, Alma is entitled to recover for compensatory damages, and as a direct and proximate result of Halle Entities' willful and malicious interference, punitive damages, in an amount in excess of several hundred million dollars.

## COUNT III -  BREACH OF IMPLIED COVENANT OF

## GOOD FAITH AND FAIR DEALING

134. The plaintiff hereby affirms, adopts and incorporates its previous allegations.

135. The plaintiff asserts in the alternative, if the Court should determine that the Settlement Agreement referenced above should not be set aside, the Halle Entities have breached the implied covenant of good faith and fair dealing as to the Settlement Agreement.

136. The plaintiff asserts that with regard to all other contractual relationships between the Debtor and Halle, the Halle Entities have breached the implied covenant of good faith and fair dealing.

137. Alma, Nathan Williams, Darrell Williams, and Nathan's Welding entered into the Settlement Agreement on or about December 14, 2007.  The terms of the Settlement Agreement are set forth within said agreement, attached as Exhibit A hereto and incorporated by reference.

138.    Under the terms of the Settlement Agreement, Alma, Nathan Williams, Darrell Williams, and Nathan's Welding were to receive benefits and rights thereunder, including but not limited to the following:

a.  To operate the Alma mines without interference from the Halle Entities;

b.  To be solely responsible for resolving, paying and/or discharging all claims of the creditors in the Chapter 11 case;

c.  To file a plan of reorganization with the bankruptcy court consistent with the Settlement Agreement and seek its approval without objection or protestation thereof from Halle Entities;

d.  To be the operator of the Alma mines with overall management responsibility for operations and operational control over the mining and sale of products

related to Right Fork I, Right Fork II (also know as Little Ty) and Netley

Properties;

     e.  That Alma would have the authority and power to perform any activity

necessary, appropriate or incidental to the mining and sale of products at the

Alma mines without interference, objection, or protestation from the Halle

Entities so long as all the conditions in the Settlement Agreement were met as

they have been at all times relevant;

     f.  That Alma had the right within the Settlement Agreement to cease

operations of the Alma mines for a period of up to twelve (12) months if the

market price for coal fell below $60/ton as it did in December of 2008 without

objection or protestation from the Halle Entities, and without the Halle entities

agreeing to purchase Alma coal for $60 per ton;

     g.  That any dispute regarding the Settlement Agreement, in order to

eliminate unnecessary litigation and ensure that no future races to Court by the

Halle related entities would ensue, to raise any issues under the Settlement

Agreement by formal notice and request for formal mediation to commence in

the event that the dispute could not be resolved prior to mediation;

     h.  And such other promises and representations as set forth within the

Settlement Agreement and demonstrated and evidenced by the negotiations

that led to its entry.

139.  The Halle Entities have breached the Settlement Agreement and violated the

implied covenant of good faith and fair dealing inherent therein, and breached all other

contractual relationships between Alma and the Halle Entities and violated the implied covenant

of good faith and fair dealing inherent therein, by, among other things:

  i. Objecting to Alma's emergency Motion to commence mining formally

in their brief and orally during the hearing of May 15, 2008;

  j. Threatening and attempting to "wipe out" the equity of Alma if Alma,

Blackberry and Pikeville did not agree to enter into an unconscionable coal

purchase agreement with the Halle Entities between May 15, 2008 and June

12, 2008, and threatening further expensive and obstructive litigation unless

Alma, Blackberry and Pikeville agreed to enter into said coal purchase

agreement;

  k. Threatening to and filing a competing plan of reorganization with the

bankruptcy court for the sole purpose of effecting a hostile takeover of the

Alma mines in violation and derogation of the Settlement Agreement and for

the express purpose of expropriating the investment Alma secured from

Pikeville and the Alma mines;

  l. Objecting to the Interim Mining Agreement expressly and

surreptitiously through the use of a proxy on the creditors committee, Mr.

Tony Gannacone, in violation and derogation of the Settlement Agreement;

  m. Filing repeated Motions to terminate the Interim Mining Agreement

and convert Alma's Chapter 11 proceeding into a Chapter 7 liquidation

proceeding in violation of the letter and spirit of the Settlement Agreement;

  n. Voting against the plan of reorganization submitted by Alma in the

bankruptcy proceeding without basis,in violation of the Settlement Agreement;

  o. Engaging in other unlawful and tortious activities calculated to deprive

Alma, Nathan Williams, Darrell Williams, and Nathan's Welding of the
benefits derived by them under the  Settlement Agreement in exchange for
which Alma, Nathan's Welding, Darrel Williams, and Nathan Williams  gave
valuable consideration, including surrendering the claims brought in the
Adversary Proceeding and other cases pending against the Halle Entities at the
time of the Settlement Agreement;

p. Circulating false statements regarding the ability of Alma to produce
and sell coal, and the ability of its stakeholders to financially support and
operate the mines successfully.

140.  In performing the acts alleged above with regard to Alma, Nathan Williams,
Darrell Williams, and Nathan's Welding, the Halle Entities engaged in unfair conduct and bad
faith for the purpose of depriving Alma, Nathan Williams, Darrell Williams, and Nathan's
Welding of the benefits derived under the Settlement Agreement in exchange for which they
provided valuable consideration, and of all other contractual benefits for which they provided
valuable consideration.

141. The law implies a covenant of good faith and fair dealing in all contracts and the
Halle Entities owed a duty of good faith and fair dealing under the Settlement Agreement to
Alma, Nathan Williams, Darrell Williams, and Nathan's Welding, and to Alma in all other
contractual agreements between the parties.

142.  The Halle Entities breached the implied covenant of good faith and fair dealing as
illustrated by the conduct alleged.

143.  As a result of the breach of the covenant of good faith and fair dealing, the Halle
Entities are liable to Alma for such damages as will be proved at trial.

## COUNT IV - ACTUAL FRAUD

144. Alma hereby affirms, adopts and incorporates the previous allegations.

145. The Halle Entities engaged in a course of conduct, as enumerated above, designed to defraud Alma, Nathan Williams, Darrell Williams, and Nathan's Welding by inducing them to enter into the Settlement Agreement in order to obtain releases from the significant claims pending against them by such parties.

146. Alma, Nathan Williams, Darrell Williams, and Nathan's Welding were induced to execute the Settlement Agreement by false accusations and devious conduct for the purpose of depriving Alma, Nathan Williams, Darrell Williams, and Nathan's Welding of the benefits for which they exchanged valuable consideration under the Settlement Agreement.

147. The above-stated conduct amounted to fraudulently malicious, oppressive, and otherwise legally actionable conduct on the part of the Halle Entities, and as a direct and proximate result thereof, Alma, Nathan Williams, Darrell Williams, and Nathan's Welding have suffered compensatory damages in an amount exceeding the jurisdictional threshold of this Court and which Alma will prove at trial.

148. Alma seeks punitive damages against the Halle Entities in the maximum amount that may be awarded at law to punish the defendants and deter future similar injurious malicious conduct.

149. In May, 2007, the Defendant, Tony Gannacone III, telephoned Deborah Reynolds, mother of the Defendant Nathan Williams, and told her that if she did not facilitate transfer to Halle Entities of the permits to mine under which Alma mines coal, her son would "be put in jail" as a result of Darrell William's and Alma's conduct. The statements were made by Gannacone to Ms. Reynolds, knowing them to be false, or with reckless disregard to the

truthfulness or falsity, at a time when Gannacone was acting as proxy for the Halle Entities.

150.  On August 31, 2007, the Defendant Consol Capital LLC, whose members are the Defendants Tony Gannacone III and Jodi Waber, filed proof of claim Number 3 in EDKY Bankruptcy Case 07-70370, signed under penalty of perjury by managing member Jodi Waber, which asserts a security interest in:

1-CAT 1967 980B loader (ID# 42H603) and

21 SC A Pedestal Shuttle Car Wide Body 64" Conveyer AC/DC Operator Side (ID# 9871).

151.  The Debtor repeatedly stated to the joint managing members of Consol Capital LLC, Jodi Waber and Toni Gannacone and their attorneys Ms. Kennedy and Mr. Hamilton; the Attorney for Halle, Mike Gartland; and Stephen Fleischman, that Mr. Gannacone had been told the location of the two items alleged to be security and that to the best of the debtor's knowledge and belief they had been repossessed by agents of Consol Capital LLC.

152. Both Ms. Waber and Mr. Gannacone denied any knowledge of the disposition of the security, and insisted that it was in the possession of the Debtor or had been wrongfully converted by a third party with the permission of the Debtor.

153. The Debtor subsequently learned that NextGen Coal is the registered fictitious name of Consol Capital LLC, that the corporate office of Consol d/b/a NextGen Coal is the Halle Companies corporate office. NextGen Coal purports on its website to be the owner / operator of the Glen Alum coal mines and processing plant, and NextGen Coal is the company that sells coal produced at the Glen Alum mines. Consol and Gannacone either own Glen Alum or are are acting as proxies for Halle Entities.

154. In mid-February 2009 the CAT 1967 980B loader (ID# 42H603) was identified as being located at the Glen Alum mine and processing plant by Anthony Preston, a worker at Glen

Alum and a brother-in-law of Darrell Williams.

155. Soon after the Debtor located the end loader it was moved to an unknown location.

156. On March 11, 2009, the equipment resurfaced at a lot owned by Mark Ford, who had been a business partner of Tony Gannacone for at least a short period of time.

157. On that same day Darrell Williams asked a Jack May to obtain a photograph of the end loader while it was in Mark Ford's lot, and to monitor the item.

158. On March 20 Mr. Ford asked Jack May why he kept looking at the loader, and was told by May that he photographed, and was watching, it for Darrell Williams.

159. Mr. Ford then called Williams, who stated that Ken Adamson, the manager at Glen Alum, had "loaned" the loader to him.

160. Tony Gannacone was asked about the end loader at a 2004 exam, and on that same day the loader was seen being transported from Mr. Ford's lot.

161. Similarly, the Debtor informed Mr. Gannacome where the shuttle car (ID# 9871) was located and that Darrell Williams had been told that Mr. Ford had "repossessed" it for Consol Capital by removing valuable parts and scrapping the rest.

162. Tony Gannacone and Jodi Waber denied any knowledge of the location or disposition of the shuttle car.

163. During the phone conversation between Darrell Williams and Mark Ford, which was recorded by Darrell Williams, Mr. Ford verified that Mr. Gannacone told him to remove the electrical panel, the most valuable part of the car, and scrap the rest.

164. Mr. Ford denied doing so, however it should be noted that Consol Capital has advertised that it is in the scrap metal business, and Mr. Gannacone made written statements that he had seen the car and knew the panel was removed.

165. Consol Capital LLC, Tony Gannacone III, Jodi Waber:

(1) knowingly and fraudulently made a false oath or account in, or in relation to, this case in proof-of-claim #3 herein, said claim having not been amended or altered;

(2) knowingly and fraudulently made a false declaration, certificate, verification, or statement under penalty of perjury in relation to this case, by Gannacone in his 2004 examination, and by Waber in proof-of-claim #3 herein, said claim having not been amended or altered;

(3) knowingly and fraudulently presented a false claim for proof against the estate of the  Debtor, and used such claim in this case in their personal capacity or through their agent, proxy, or attorney;

(4) knowingly and fraudulently concealed from creditors and the United States Trustee, property belonging to the estate of the Debtor, to-wit:

1-CAT 1967 980B loader (ID# 42H603) and

21 SC A Pedestal Shuttle Car Wide Body 64" Conveyer AC/DC Operator Side

(ID# 9871); OR

knowingly and fraudulently received a material amount of property from the Debtor after the filing of this Case, with the intent to defeat the provisions of title 11, to-wit:

 1-CAT 1967 980B loader (ID# 42H603) and

21 SC A Pedestal Shuttle Car Wide Body 64" Conveyer AC/DC Operator Side

(ID# 9871); AND

in a personal capacity and as an agent or officer of any person or corporation, in contemplation of a case under title 11 by or against the person or any other person or corporation, or with intent to defeat the provisions of title 11, knowingly and fraudulently

transferred or concealed the property of such other person or corporation to-wit:

 1-CAT 1967 980B loader (ID# 42H603) and

21 SC A Pedestal Shuttle Car Wide Body 64" Conveyer AC/DC Operator Side

(ID# 9871).

166. Warren E. Halle and employees and officers of the Halle Entities in a personal

capacity and as an agent or officer of any person or corporation, with intent to defeat the

provisions of Title 11, knowingly and fraudulently transferred or concealed any of his property

or the property of such other person or corporation to-wit: 1-CAT 1967 980B loader (ID#

42H603).

167. At the hearing held by this Court on April 8, 2009, Warren E. Halle, through his

counsel Mr. Shelton, stated to the Court that an offer to vote in favor of the Debtor's Plan had

been sent to the Debtor, and that Alma Energy had not responded.

168. In fact no offer to vote in favor of the Debtor's Plan was sent to Alma Energy by

Halle or anyone associated with the Halle Entities.

169. The Voting Agreement was provided to Alma by a party other than Halle, and

contains no signature line for the Debtor.

170. The Debtor was intentionally not included by Halle, so that the Court would not

have been given the opportunity to approve or reject the Voting Agreement, and the Debtor,

Creditors, and other parties-in-interest would have been adversely affected without notice and

opportunity to object.

171. Mr. Gartland, for Warren Halle and the Halle Entities, has repeatedly stated to the

Court that without Pikeville Energy Group LLC's financial support Alma Energy LLC cannot

survive, it simply will not have the funds to start the mine back up. Presumably this economic

reality was being relied on by Halle, who would assume that Pikeville could, on penalty of withdrawing funding, obtain the signatures of Nathan Williams for Blackberry and Darrell Williams individually on the Voting Agreement?

172. Mr. Gartland stated Mr. Halle's position that if Pikeville cut off funding for the Debtor it could not restart the mines, even if a coal purchase contract would allow it to pay 100% of the claims of all creditors under the Plan.

173. The Voting Agreement provides that if Pikeville, Blackberry, and Darrell Williams will not pursue their claims against Warren Halle and Halle Entities, Halle will vote for the plan and withdraw his opposition.

174. Paragraph 12 of the Voting Agreement provides:

"12. In the event that the Debtor asserts any Claims against the Halle Related Parties or their respective members, officers, directors, shareholders, interest holders, employees and/or legal counsel, then Pikeville and Blackberry shall defend against and hold harmless the Halle Related Parties and their respective members, officers, directors, shareholders, interest holders, employees and/or legal counsel from any and all such asserted Claims."

175. If Pikeville had signed Halle's Voting Agreement, it would have had to hold the Halle Entities harmless from any Claims the Debtor asserted against the Halle Related Parties.

176. Since Pikeville would have had to reimburse Halle for every cent of every valid claim the Debtor has against the Halle entities, Pikeville Energy Group LLC would necessarily cut off all funds to the Debtor, Alma Energy LLC, if it pursued any valid Claim of the Estate against Halle – including the filing of this Adversary Complaint.

177. Furthermore, in Paragraph 9(b) of the Voting Agreement the Halle entities release

Pikeville, Blackberry and Williams from any claims, but they do not release the Debtor from

"Claims" against it by Halle, broadly defined as:

> "For purposes of this Agreement, Claim or Claims means any and
> all liabilities, obligations, claims, actions, demands, causes of
> action, suits, counterclaims, defenses, debts, sums of money due or
> owed, accounts, covenants, contracts, agreements, any
> amendments or modification thereto, arrangements, promises,
> obligations, warranties, trespasses, torts, injuries and losses of
> whatever kind, character, type, nature and description, in law or in
> equity, whether asserted or unasserted, known or unknown,
> anticipated or unanticipated, suspected or unsuspected, absolute,
> fixed, conditional or contingent, matured or unmatured, liquidated
> or unliquidated in amount, due or to become due and whether
> arising in contract, tort, or otherwise, which originated in whole or
> in part at any time before the date of this Agreement."

178.  Warren E. Halle has claimed that a Halle Entity is the sub-lessee of the Pocahontas

leases, and that the Debtor that it is in fact not the sub-lessee of Pocahontas.

179. Under the Voting Agreement Mr. Halle does not release his claim to the Pocahontas

Leases, yet under paragraph 12 Pikeville must hold Halle harmless if the Debtor successfully

defends its claim to title of the very lands on which it mines, the Pocahontas Leases.

180. This provision would leave Pikeville no choice but to exercise economic coercion

on Alma Energy if it sought to protect assets of the estate from claims by Mr. Halle, for every

time Alma won a victory in this Court or other Courts, Pikeville Energy would lose.

181. The Voting Agreement would make it impossible for the Debtor to pursue claims

against the Halle entities for any wrongful conduct covered in the agreement, no matter how

egregious and no matter how much it harmed creditors.

182. If Pikeville had chosen to protect its investment by taking the unethical and unlawful course of executing the Voting Agreement so that it could recover and sell mining equipment owned by Pikeville but contractually used to mine Alma coal, it would have insisted that the existence and terms of the Voting Agreement not be disclosed to Alma, and Alma would have never known why Halle had a change of heart and voted for the plan. Williams would have had one more chance to get an Alma Plan confirmed, Pikeville would have recovered most of its investment, and Blackberry could have moved on to other projects. However if the Plan did not succeed - it is the Creditors who would never have known why Pikeville did not fund the pursuit of valid claims against Halle, and why Halle got everything and they received nothing.

183. Warren E. Halle and the Halle Entities knowingly and fraudulently gave, offered, received, and attempted to obtain money or property, remuneration, compensation, reward, advantage, or promise thereof for acting or forbearing to act in any case under Title 11;

184.  Warren E. Halle, in a personal capacity or as an agent or officer of any person or corporation, namely the Halle Entities, with intent to defeat the provisions of Title 11, knowingly and fraudulently conspired to transfer or conceal the property of such other person or corporation, to-wit assets of the Bankruptcy Estate, including but not limited to claims of Alma to the Pocahontas Leases.

185. On the date of closing of the transaction in which Warren E. Halle and Halle Entities invested in Alma, 4.7 million dollars contributed by THC to KCV I was disbursed by the attorney for KCV I, Billy Shelton to the following payees:

| | |
|---|---|
| Grundy NB (Right Fork Payoff) | $1,513,222.59 |
| Grundy NB (Netley Deep Mine Payoff) | $1,916,332 16 |
| WestRiver Machinery / Joe Street & J.B. Roulett | $1,025,000.00 |
| Alma Energy, LLC (Working Capital) | $  250,000.00 |

186. The closing statement, signed by Warren Halle, also shows $100,000 being paid to Tony Gannacone III.

187. In fact Mr. Gannacone testified at his 2004 Examination that he received $35,000, not $100,000, at closing and that the closing statement was false.

188. Mr. Gannacone stated that the balance of the funds could have been paid to a man who goes by the name "Ren", being the same person who introduced Warren Halle to Tony Gannacone who in turn introduced Halle to Darrell Williams.

189. Mr. Halle has denied knowing anyone who goes by the name "Ren".

190. In his 2004 examination held in Maryland in 2007, Warren E. Halle knowingly and fraudulently made a false statement under penalty of perjury, that he did not know anyone who goes by the name "Ren". The Debtor is pursuing further information regarding "Ren" and the false closing statement, and reserves the right to Amend this Complaint as future information warrants.

191. That as a direct and proximate result of the fraudulent conduct set out above, the Plaintiff is entitled to compensatory damages.

That as a direct and proximate result of the willful and malicious fraudulent conduct set out above, the Plaintiff is entitled to punitive damages.

## COUNT V - BREACH OF WRITTEN CONTRACT

192.  Alma hereby affirms, adopts and incorporates the previous allegations.

193.  In the alternative, in the event that the Court should determine that the Settlement Agreement referenced above should not be set aside, the Halle Entities have breached the expressed terms thereof as previously alleged.

194. The plaintiff asserts that with regard to all other contractual relationships between the Debtor and Halle, the Halle Entities have breached expressed terms thereof as previously alleged.

195.  The actions of the Halle Entities amount to anticipatory breach of the Settlement Agreement entitling Alma, Nathan Williams, Darrell Williams, and Nathan's Welding to compensatory damages including, but not limited to, the value of the claims surrendered in the Settlement Agreement as well as all other consequential and incidental damages proximately caused thereby which Alma will prove at trial.

196.  The repeated breaches of the Settlement Agreement by the Halle related parties and the anticipatory breaches thereof including the Halle Entities expressed intent to oppose confirmation of Alma's reorganization plan renders further performance by Alma, Nathan Williams, Darrell Williams, Pikeville, and Blackberry impossible.  Alma cannot serve as the exclusive operator of the Alma mines when the Halle Entities have taken all steps necessary to prevent Alma from obtaining confirmation of its Chapter 11 reorganization plan and where the Halle Entities have frustrated the efforts of Alma to mine and sell coal, including but not limited to interfering with the business of Pikeville, the company that has financed Alma and its contract miner, Blackberry.

197.  As a direct and proximate result of the Halle Entities' breaches as set forth above,

Alma, Nathan Williams, Darrell Williams, and Nathan's Welding have suffered compensatory damages an amount that exceeds the jurisdiction of this Court, including but not limited to the value of the claims surrendered under the Settlement Agreement for which Alma seeks damages.

198. The Court has Jurisdiction over the Settlement Agreement for the reason that the Parties to the Settlement Agreement provided in said Settlement Agreement that "… Alma shall file in the Chapter 11 Case a motion to approve such agreement pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure and take all steps necessary to obtain entry of a final Order by the Bankruptcy Court approving this Agreement…"

Furthermore, on November 30, 2007, upon Notice of a settlement having been reached and without approval of the Settlement Term Sheet or the Settlement Agreement, the United States District Court For The District Of Maryland, Southern Division, Dismissed Civil Action No. AW-07-1339, Kentucky Coal Venture I, LLC, Plaintiff, v. Alma Energy, LLC, et. al., with prejudice attaching on February 28, 2008. Dismissal pursuant to the settlement without approval of the settlement or the Settlement Agreement, leaves this Court as the only Court with current jurisdiction and venue to address fraud in the inducement with regard to the Settlement Agreement, and to otherwise address the Settlement Agreement.

Furthermore, the Halle Entities have waived any right to mediation or legal action under paragraph 46 of the Settlement Agreement by repeatedly and consistently bringing matters purportedly addressed by the Settlement Agreement before this Court, and by taking actions consistent with the Settlement Agreement being null and void. As a result of their actions before this Court in derogation of the Settlement Agreement, the Halle Entities should be estopped from arguing that this Court is not the proper forum.

63

## COUNT VI – CIVIL CONSPIRACY

199.  Alma hereby affirms, adopts and incorporates the previous allegations.

200.  The Defendants, KCVI, KCVII, WVCVI, KWV, CONSOL d/b/a NextGen Coal, WABER, GANNACONE, UNNAMED DEFENDANTS associated with Warren E. Halle, and WARREN E. HALLE, acting as a single enterprise, maliciously and unlawfully conspired together as previously set out in this complaint to injure the Plaintiff's business and property rights.

201.  As a direct and proximate result of the acts enumerated in the complaint, the Plaintiff has suffered damages that this Court has jurisdiction to grant a remedy for, including compensatory damages and injunctive relief.

202.  In committing these acts, said Halle Entities acted with intentional malice toward the Plaintiff and the Plaintiff is entitled to recover punitive damages.

## COUNT VII - PROMISSORY ESTOPPEL

203.  Alma hereby affirms, adopts and incorporates the previous allegations.

204.  The Defendants, KCVI, KCVII, WVCVI, KWV, CONSOL d/b/a NextGen Coal, WABER, GANNACONE, UNNAMED DEFENDANTS associated with Warren E. Halle, and WARREN E. HALLE, individually, acting as a single enterprise, made gratuitous promises that they should reasonably have expected to induce action or forbearance of a definite and substantial character on the part of the Alma.

205. Alma justifiably relied on the promises.

206. As a direct and proximate result of Alma's reliance on said promises, and Alma's action or forbearance as a result of said promises, Alma suffered a pecuniary loss.

207. Injustice can be avoided only by enforcement of the promises

208.  As a direct and proximate result of the acts enumerated in the complaint, the Plaintiff has suffered damages that this Court has jurisdiction to grant a remedy for, including compensatory damages and injunctive relief.

## COUNT VIII - TRADE LIBEL

209.  Alma hereby affirms, adopts and incorporates the previous allegations.

210.  The Defendants, KCVI, KCVII, WVCVI, KWV, CONSOL d/b/a NextGen Coal,

WABER, GANNACONE, UNNAMED DEFENDANTS associated with Warren E. Halle, and

WARREN E. HALLE, individually, published false statements of fact that constitute intentional

disparagement of the quality of the services or products of the Plaintiff's business.

211.  As a direct and proximate result of publication, the Plaintiff has suffered pecuniary

damages that this Court has jurisdiction to grant a remedy for, including the granting of

compensatory damages and injunctive relief.

212.  As a direct and proximate result of willful and malicious publication, the Plaintiff

has suffered damages that this Court has jurisdiction to grant a remedy for, including the

granting of punitive damages.

## <u>COUNT IX - INJUNCTIVE RELIEF</u>

213.  Alma hereby affirms, adopts, and incorporates the previous allegations.

214.  The Defendants, KCVI, KCVII, WVCVI, KWV, CONSOL d/b/a NextGen Coal, WABER, GANNACONE, UNNAMED DEFENDANTS associated with Warren E. Halle, and WARREN E. HALLE, acting both individually and as a single enterprise, have as alleged herein wrongfully interfered with and hindered the efforts of Alma Energy, LLC, to market the coal from its properties in order to perform under its plan of reorganization and fulfill its obligations as Debtor-In-Possession for the benefit of Creditors, entitling the Plaintiff, Alma Energy to injunctive relief.

215. The Defendants, KCVI, KCVII, WVCVI, KWV, UNNAMED DEFENDANTS associated with Warren E. Halle, and WARREN E. HALLE, acting both individually and as a single enterprise, have wrongfully claimed, and continue to wrongfully claim, ownership of the Pocahontas Leases, resulting in Alma being unable to obtain a long term coal sales contract and being unable to obtain sufficient financing for the mining of the Pocahontas Leases, entitling the Plaintiff, Alma Energy to injunctive relief.

216. The Plaintiff further states:

(a)  That Tony Gannacone, III, and the Halle Entities have contacted various coal buyers and hindered Alma's efforts to obtain a coal contract.

(b)  That Tony Gannacone, III, and the Halle Entities have contacted various coal buyers and investors and claimed ownership of the Pocahontas Leases, hindering Alma's efforts to obtain a coal contract and financing.

(c)  The Partial Assignment of the Pocahontas Leases to KCV I was executory in nature for the reason that the transfer was not completed.

(d)   Alma rejected executory contracts including the purported Assignment to KCV I.

(e)   The purported Assignment to KCV I was not valid for the reason that Alma and KCV I did not obtain written permission from Pocahontas Land Corporation to transfer the Pocahontas Leases as required by the terms of said leases.

(f)   Alma assumed the Pocahontas Leases by Agreed Order entered in this Case without objection.

(g)   The Settlement Agreement provides that all prior written agreements are terminated.

217.  The Plaintiff states as follows:

(a)   Equitable and injunctive relief has not been sought or denied in this or any other jurisdiction.

(b)  There is a substantial likelihood that the Plaintiff will succeed on the merits of its claims.

(c)  The interest of the Creditors and of the public will be served by enjoining the unlawful activity of the Halle Entities.

(d)  The Plaintiff has no adequate remedy at law.

218.  Unless a temporary restraining order, temporary injunction, and permanent injunction are granted the Plaintiff will suffer immediate and irreparable injury.

219.  Unless such an injunction is entered, the Halle Entities will continue to wrongfully prevent potential coal purchasers and investors from doing business with Alma.

220.  No cognizable harm will be caused to the Defendants, Halle Entities, by an injunction Prohibiting their wrongful interference and claims of ownership.

**WHEREFORE,** the Plaintiff, Alma Energy LLC, demands relief as follows:

(1)   Compensatory damages, in excess of the jurisdictional amount and in an amount to be determined at trial;

(2)   Pre-Judgment interest thereon;

(3)   Punitive damages;

(4)   That the written Settlement Agreement by and between the parties be declared void *ab initio*;

(5)   That a temporary restraining order, temporary injunction and permanent injunction should be granted against the Defendants, KCVI, KCVII, WVCVI, KWV, CONSOL d/b/a NextGen Coal, WABER, GANNACONE, UNNAMED DEFENDANTS associated with Warren E. Halle, and WARREN E. HALLE.

(6)   That the Court set aside the Orders dismissing in Adversary Proceedings 07-7025 and 07-7032 under FRCP 60, and relieve Alma from the judgment, order, or proceeding as a result of the unknown Claims stated herein that existed prior to the date of said Orders.

(7)   That the Court grant the Plaintiff twenty days from the date that the Settlement Order and the Orders Dismissing in Adversary Proceedings 07-7025 and 07-7032 are set aside to exercise all rights that the Debtor held under USC Title 11 on the date of entry of the Orders, as if said rights had been exercised on or before the date of entry of said Orders.

(8)   That the Court consolidate the Claims of Alma in Adversary Proceedings 07-7025 and 07-7032 in this action and allow the Debtor to prosecute all Claims against the Halle Entities stated in the Complaint and Amended Complaints filed by Alma in those proceedings in the trial of this case.

(9)   For reasonable attorney's fees and costs.

(10)    For any just and further relief to which the Plaintiff may appear to be entitled.

                                           _/s/ Paul Stewart Snyder_____
                                           PAUL STEWART SNYDER
                                           Attorney for the Debtor
                                           P.O. Box 1067
                                           Ashland, Ky  41105
                                           606 325-5555
                                           ps@ws5.com

I have read the foregoing and state under penalty of perjury that it is true and correct to the best of my knowledge and belief.

<div style="margin-left:40%">

__/s/ Nathan Williams_____
Nathan Williams as
Managing Member
Alma Energy, LLC

</div>

COMMONWEALTH OF KENTUCKY
COUNTY OF PIKE

Subscribed and sworn to, or duly affirmed, and acknowledged before me by Nathan Williams, managing member of Alma Energy LLC, who declared that the statements contained herein are true and correct to the best of his knowledge and belief, this the 2nd day of May, 2009.

My commission expires: 5/11/11

__/s/ Paul Stewart Snyder_____
NOTARY PUBLIC, KENTUCKY
STATE AT LARGE

I have read the foregoing and state under penalty of perjury that it is true and correct to the best of my knowledge and belief.

<div style="margin-left:40%">

_/s/ Darrell Williams_____
Darrell Williams as
Contract Agent for Alma Energy, LLC

</div>

COMMONWEALTH OF KENTUCKY
COUNTY OF PIKE

Subscribed and sworn to, or duly affirmed, and acknowledged before me by Darrell Williams, contract agent of Alma Energy LLC, who declared that the statements contained herein are true and correct to the best of his knowledge and belief, this the 2nd day of May, 2009.

My commission expires: 5/11/11

__/s/ Paul Stewart Snyder_____
NOTARY PUBLIC, KENTUCKY
STATE AT LARGE