## FRAMEWORK AGREEMENT

**THIS FRAMEWORK AGREEMENT**, made and entered into this the 9th day of August, 2006, by and between THC KENTUCKY COAL VENTURE I LLC, a Maryland limited liability company (hereinafter referred to as "HALLE"); ALMA ENERGY, LLC, a Virginia limited liability company (hereinafter referred to as "ALMA") and DARRELL WILLIAMS, an individual with a primary business office address of 59 Davis Branch Road, Stone, Kentucky (hereinafter referred to as "WILLIAMS").

WITNESSETH:

WHEREAS, ALMA currently holds coal leases, surface leases, mining agreements, permit agreements and other agreements that allow it to produce and sell coal, sandstone and other mineral products from mining operations located in Pike County, Kentucky, a complete listing of which are attached to this AGREEMENT as Exhibit A (the "RIGHTS");

WHEREAS, WILLIAMS, a member in ALMA, has the expertise to locate additional mining properties in and around Pike County, Kentucky;

WHEREAS, ALMA and WILLIAMS desire to contract with HALLE, pursuant to the terms of this AGREEMENT, whereby HALLE will provide funding for the mining operations to be conducted by ALMA as contractor to a joint venture company, KENTUCKY COAL VENTURE I LLC (the "COMPANY") formed pursuant to the laws of the State of Delaware and owned by HALLE and ALMA as its sole members, in exchange for a portion of the gross revenues realized from the mining operations as described herein.

1

NOW THEREFORE, in consideration for the promises contained herein and the promises to be performed, the parties hereby agree as follows:

1. HALLE and ALMA shall form the COMPANY pursuant to an agreement acceptable to HALLE and ALMA (the "LLC AGREEMENT") and qualify the COMPANY as a foreign limited liability company under the laws of the State of Kentucky. Upon execution of the LLC AGREEMENT, HALLE agrees to make a capital contribution to the COMPANY in the amount of $4,704,554.75 to be disbursed in accordance with a budget agreed to by HALLE and ALMA, and ALMA shall contribute to the COMPANY the RIGHTS, as described more fully in Section 2 below. The LLC AGREEMENT shall provide, among other things, that HALLE shall receive fifteen percent (15%) (with regard to coal sales, such share to increase by 1% for every $2.00 of increase in price over $60.00 per ton) of all gross sales due unto the COMPANY from sale of coal, sandstone and other products extracted pursuant to the RIGHTS (collectively, the "PRODUCTS"), the identification, extraction, mining, marketing, and sale of such PRODUCTS (collectively, the "OPERATIONS") to be performed by ALMA, as agent for the COMPANY pursuant to the terms of a contract between ALMA and the COMPANY (the "MINING AGREEMENT"), and that the balance of any cash of the COMPANY arising from sale of PRODUCTS, after payment of all its debts and obligations and the establishment of such reserves that HALLE, as managing member, deems reasonably necessary, shall be distributed to ALMA, not later than the next business day following the COMPANY's receipt of such funds.

2. ALMA shall contribute to the COMPANY all of the RIGHTS and, in connection with the same:

    a. ALMA shall execute and deliver any and all documents necessary or reasonably desirable to effect and evidence transfer to the COMPANY all of ALMA's interests in the RIGHTS (including, without limitation, any required third party consents, filings, and registrations, title insurance policies and an opinion of counsel reasonably acceptable to HALLE that, following such transfer, the COMPANY is the owner of all of right, title and interest in and to the RIGHTS). The COMPANY will accept the assignment of such rights, but all obligations under the RIGHTS shall be borne by ALMA, except to the extent the agreed-upon budget provides to the contrary.

    b. the LLC AGREEMENT and the MINING AGREEMENT shall provide that ALMA shall be responsible for all mining costs, taxes, fees, royalties, reclamation costs, if any, and any and all other costs associated with the OPERATIONS (collectively, the "ALMA COSTS") and that, should ALMA fail to pay such costs as and when due, HALLE, as managing member, may cause the COMPANY to deduct all ALMA COSTS from the distributions due to ALMA pursuant to the LLC AGREEMENT or, to the extent not such distributions are not sufficient to cover the ALMA COSTS, the MINING AGREEMENT shall require ALMA to fund any such shortfall.

    c. ALMA and the COMPANY shall enter into the MINING AGREEMENT, an agreement that shall require ALMA, as agent for the COMPANY and for no fee other than the value of its interest in the

US1DOCS 5751983v8

COMPANY. Among other things, the MINING AGREEMENT shall require ALMA to maintain and provide to HALLE and the COMPANY reports, records and receipts reflecting all OPERATIONS and shall deliver copies to HALLE and the COMPANY at the close of each day's business. The MINING AGREEMENT shall provide that HALLE and the COMPANY, together with the employees and agents of each, shall have the right to enter ALMA's business office or any location where ALMA conducts OPERATIONS at any time to conduct an independent assessment or engineering study to confirm PRODUCT production therefrom. The LLC AGREEMENT shall provide that, in the event ALMA fails to comply with the provisions of the MINING AGREEMENT regarding production, sales and mining reports be delivered to HALLE and the COMPANY at the close of the following business day, then ALMA will forfeit to HALLE its interest in the proceeds from that day's sale of PRODUCTS that by ALMA, as agent for the COMPANY.

   d. The MINING AGREEMENT shall require ALMA to conduct its operations, including the OPERATIONS, in compliance with all laws, both State and Federal, including, but not limited to, all environmental and safety laws relating to the mining, marketing, transportation, and sale of the PRODUCTS. Pursuant to the MINING AGREEMENT, ALMA shall also indemnify, hold harmless and defend HALLE and the COMPANY from any claims whatsoever, resulting from its operations pursuant to this AGREEMENT, including, but not limited to, civil lawsuits, civil penalties from the various regulatory agencies, wage claims, claims for unpaid

US1DOCS 5751983v8

royalties and any and all other claims arising from the RIGHTS, the PRODUCTS or the OPERATIONS. The MINING AGREEMENT shall also require ALMA to maintain all insurance reasonably required by HALLE, as managing member of the COMPANY, all of which shall be carried under policies naming the COMPANY and HALLE as additional insureds.

  e. As security for its obligations under the MINING AGREEMENT, the MINING AGREEMENT shall require ALMA to execute any and all documents deemed necessary by the HALLE to grant unto the COMPANY a perfected first and prior lien on all of the assets of ALMA, all of which are listed on the attached Exhibit B, provided however, that after HALLE has received distributions under the LLC AGREEMENT equal to the sum of all capital contributions of HALLE to the COMPANY, the COMPANY shall, at the request of ALMA, subordinate its lien to other financing reasonably required to permit ALMA to perform its obligations under the MINING AGREEMENT. The MINING AGREEMENT and the LLC AGREEMENT shall provide that neither ALMA nor the COMPANY shall sell, assign or otherwise encumber any assets without the prior, express written permission of HALLE, as managing member of the Company.

  f. The MINING AGREEMENT shall provide that ALMA shall provide the COMPANY with detailed descriptions, estimates, invoices and summaries for all anticipated expenses or purchases of items that are not considered normal day to day items and that ALMA shall obtain approval from HALLE, as managing member of the COMPANY, prior to making any

5

such purchase. The MINING AGREEMENT shall also require ALMA to provide to HALLE and the COMPANY weekly reports which provided detailed reports of anticipated expenses and detailed proposed requisitions for the up-coming week. Upon receipt of these weekly reports, HALLE, as managing member of the COMPANY, will have the sole discretion to cause the COMPANY to advance the requested monies to ALMA pursuant to the MINING AGREEMENT or to advise ALMA of its intent to not provide the requested funds to ALMA. Notwithstanding anything to the contrary contained in this AGREEMENT, the MINING AGREEMENT or the LLC AGREEMENT, the maximum amount of funds required to be advanced by HALLE during the terms of all such agreements shall not exceed $4,704,554.75 plus such additional amounts expressly agreed to by HALLE pursuant to the LLC AGREEMENT and the MINING AGREEMENT, and in no event shall (i) HALLE be required to re-advance any proceeds received by HALLE pursuant to the LLC AGREEMENT, or (ii) HALLE or any of its affiliates or principals be required to enter into any guaranty, indemnity or other recourse obligation in connection with the RIGHTS, the OPERATIONS, the COMPANY or the other terms of this AGREEMENT.

    g.    Intentionally Omitted.

    h.    The MINING AGREEMENT shall require ALMA to conduct the OPERATIONS in a profitable, safe and environmentally compliant manner. ALMA shall make all day to day decisions relating to the

6

OPERATIONS in accordance with the terms of the MINING AGREEMENT.

3. WILLIAMS shall join the MINING AGREEMENT to evidence his following agreements:

    a. WILLIAMS shall be the exclusive agent of the COMPANY for purposes of investigating and overseeing the future acquisition of additional mining properties, mining permits, leases, surface agreements, mining agreements, coal sales agreements and any and all other necessary documents similar to the RIGHTS related to the mining of materials similar to the PRODUCTS, subject to the COMPANY's consent to such acquisitions, which may be withheld in the sole discretion of HALLE as managing member. WILLIAMS understands and agrees that his obligations under the MINING AGREEMENT will represent a full time commitment by him to the COMPANY and require that he remain at or in the vicinity of the OPERATIONS, both current and, to the extent approved by the members pursuant to the LLC AGREEMENT, future projects, in order to properly perform his duties under this AGREEMENT and the MINING AGREEMENT.

    b. The MINING AGREEMENT shall require that WILLIAMS not compete with ALMA, HALLE or the COMPANY in the business of locating, acquiring, leasing, selling assets similar to the RIGHTS, brokering the lease or sale of assets similar to the RIGHTS or in the business of locating, acquiring, extracting, mining, transporting or selling materials similar to the PRODUCTS or brokering the locating, acquiring, extracting,

7

mining, transporting or selling materials similar to the PRODUCTS and shall first obtain the express authorization of HALLE, as managing member of the COMPANY, prior to entering into any agreement on behalf of the COMPANY. The MINING AGREEMENT shall provide that WILLIAMS agrees that he does not have any authority, express or implied, to bind HALLE or the COMPANY to any agreement, without its express written consent.

c. The MINING AGREEMENT shall require WILLIAMS to use his best efforts to procure additional, profitable mining properties and operations for the COMPANY's consideration and approval throughout the term of the MINING AGREEMENT. In the event additional mining properties are procured and approved by the COMPANY, the COMPANY shall hold all leases, mining rights and other mining agreements or other assets similar to the RIGHTS in its own name, all in the same manner as provided for herein with regard to the RIGHTS.

4. The MINING AGREEMENT shall provide that ALMA may terminate the MINING AGREEMENT only in the event ALMA or its principals cease all of their mining activities, and, in such event, the MINING AGREEMENT shall terminate without penalty to the COMPANY and ALMA shall resign as a member of the COMPANY and waive all claims upon or against the COMPANY. HALLE shall have the exclusive right to terminate the MINING AGREEMENT and ALMA's interest in the COMPANY upon the death, retirement, incapacity of WILLIAMS, the dissolution, winding up, termination, liquidation or bankruptcy of ALMA and/or the non-compliance by WILLIAMS with the terms of this

8

AGREEMENT or the MINING AGREEMENT or the noncompliance by ALMA with this AGREEMENT, the MINING AGREEMENT or the LLC AGREEMENT and, in such event, the MINING AGREEMENT shall terminate without penalty to the COMPANY and ALMA shall resign as a member of the COMPANY and waive all claims upon or against the COMPANY. Notwithstanding the foregoing, HALLE shall not exercise the rights described in this Section 4 in the event that, prior to the conditions permitting such exercise having arisen, ALMA and WILLIAMS have identified and obtained competent, reputable individuals or companies reasonably capable of performing the duties and obligations of WILLIAMS and ALMA as set forth in the LLC AGREEMENT and MINING AGREEMENT and willing to assume the rights and obligations of WILLIAMS or ALMA under the MINING AGREEMENT and LLC AGREEMENT, as applicable. The parties acknowledge and agree that HALLE shall have the sole discretion to determine if the individuals identified and obtained by ALMA and WILLIAMS are adequate and acceptable replacements for ALMA or WILLIAMS, as applicable, in performing the obligations of such party under the LLC AGREEMENT or MINING AGREEMENT.

5.     The parties hereto acknowledge and agree that two of the members of ALMA, Joe Street and J.B. Roulette, will, upon execution of the MINING AGREEMENT advance to ALMA a working capital loan in the amount of Five Hundred Thousand Dollars ($500,000.00) (the "STREET/ROULETTE LOAN"). The STREET/ROULETTE LOAN shall, by its terms, be expressly subordinate to ALMA's obligations under the MINING AGREEMENT and shall not be payable until such time as the COMPANY shall have made distributions to

9

under the LLC AGREEMENT equal to the sum of all capital contributions of HALLE to the COMPANY, at which time the STREET/ROULETTE LOAN shall be payable from distributions otherwise due to ALMA under the LLC AGREEMENT. Prior to the execution of the LLC AGREEMENT, ALMA shall provide to the COMPANY a copy of the note and other documents evidencing the STREET/ROULETTE LOAN.

6. The LLC AGREEMENT shall provide that the unanimous written consent of the members of the COMPANY shall be required prior to the sale of any assets of the COMPANY (other than PRODUCTS sold in the ordinary course of the COMPANY's business), and that the proceeds of any such sale shall first be paid in satisfaction of the COMPANY's debts then due (or any debt of the COMPANY to any of its members), then distributed to the members of the COMPANY pro rata in accordance with the unreturned capital contributions of each, and thereafter shall be distributed to the Members as follows: 75% to HALLE and 25% to ALMA. The LLC AGREEMENT shall provide that ALMA's rights as member thereunder shall be limited to its consent rights as described in this Section 6 and its rights to receive distributions as described in this Section 6 and Section 1 above.

7. ALMA represents and warrants that: (i) ALMA is a Virginia limited liability company duly organized and validly existing under the laws of the Commonwealth of Virginia and is in good standing under the laws of the Commonwealth of Virginia and is in good standing and authorized to transact business under the laws of the Commonwealth of Kentucky, (ii) ALMA has full right and authority to enter into this AGREEMENT and to transfer all of the

10

RIGHTS to the COMPANY and to consummate or cause to be consummated the transactions contemplated by this AGREEMENT, (iii) all coal leases, surface leases, mining agreements, permit agreements and other agreements that allow ALMA to produce and sell coal; sandstone and other products from mining operations located in Pike County, Kentucky are listed on the attached Exhibit A, (iv) ALMA holds transferable title to all of the RIGHTS free and clear of all liens, claims, encumbrances, and other restrictions, (v) all assets of ALMA (other than those listed on the attached Exhibit A) are listed on the attached Exhibit B, and such assets are held by ALMA free and clear of all liens, claims, encumbrances, and other restrictions.

8.     HALLE represents and warrants that (i) HALLE is a Maryland limited liability company duly organized and validly existing under the laws of the State of Maryland, and (ii) HALLE has full right and authority to enter into this AGREEMENT and consummate or cause to be consummated the transactions contemplated under this AGREEMENT.

9.     This AGREEMENT shall be governed by the laws of the State of Maryland. The parties acknowledge that HALLE's involvement was solicited in the State of Maryland and that this AGREEMENT was negotiated in part in the State of Maryland and last executed in the State of Maryland and hereby submit to the jurisdiction of the United States District Courts for the District of Maryland or the Circuit Court of Montgomery County, Maryland, for the resolution of any dispute hereunder. The parties further agree that the prevailing party in any litigation arising from this agreement, between the parties hereto, shall be entitled to recover its attorneys fees and costs from the other party.

11

10. The parties acknowledge and agree that nothing contained herein shall inure to the benefit of third parties.

11. This AGREEMENT contains the complete and only agreement between the parties hereto with respect to the subject matter hereof, and expressly supersedes and stands in lieu of any prior discussions or understandings which may have taken place prior to the execution of same. This AGREEMENT contains the entire agreement between the parties hereto and the terms hereof are contractual and not a mere recital. This AGREEMENT shall not be amended except in writing, subscribed to by all parties. The parties intend that this AGREEMENT survive the execution of the LLC AGREEMENT and the MINING AGREEMENT, provided, however, in the event that any provision of this AGREEMENT conflicts with any provision of the LLC AGREEMENT or the MINING AGREEMENT, the provisions of such other agreement shall supercede the provisions of this AGREEMENT.

12. This AGREEMENT shall terminate and become null and void at the option of any party hereto in the event that a final, definitive LLC AGREEMENT and a final, definitive MINING AGREEMENT are not executed by HALLE, ALMA and WILLIAMS on or prior to August 1, 2006.

13. This AGREEMENT may be executed in multiple counterparts, each of which shall constitute an original and all of which shall constitute a single AGREEMENT. This AGREEMENT may be executed by electronic or facsimile transmission.

12

IN WITNESS WHEREOF, the parties have caused their signatures to be affixed hereto as of the day and year first above written.

>THC KENTUCKY COAL VENTURE I LLC, a Maryland limited liability company
>
>By: ___/s/ Warren E. Halle___
>Warren E. Halle, President
>
>ALMA ENERGY, LLC, a Virginia limited liability company
>
>By: _____
>Name:
>Title:
>
>_____
>DARRELL WILLIAMS

IN WITNESS WHEREOF, the parties have caused their signatures to be affixed hereto as of the day and year first above written.

THC KENTUCKY COAL VENTURE I LLC, a Maryland limited liability company

By: _____
Warren E. Halle, President

ALMA ENERGY, LLC, a Virginia limited liability company

By: *Nathan Williams*
Name: Nathan Williams
Title: Member

*Darrell Williams*
DARRELL WILLIAMS

13

EXHIBIT A

RIGHTS

1. Partial Assignment and Assumption Agreement dated June 28, 2005 from Martin County Coal Corporation to Alma Energy, LLC. Assignor obtained its rights pursuant to an Amended and Restated Lease dated February 22, 1993 from Pocahontas Development Corporation.

2. Partial Assignment and Assumption Agreement dated June 29, 2006 from Martin County Coal Corporation to Alma Energy, LLC. Assignor obtained its rights pursuant to an Amended and Restated Lease dated February 22, 1993 from Pocahontas Development Corporation.

3. Permit Transfer Agreement dated June 29, 2006 from Stone Mining Company to Nathan's Welding, LLC, which transfers Kentucky Surface Coal Mining and Reclamation Permit No. 898-5758 to Nathan's Welding, LLC.

4. Permit Agreement between Nathan's Welding, LLC and Alma Energy, LLC dated June 29, 2006 giving Alma Energy, LLC the irrevocable right to mine, by itself or its designees, on all permits held by Nathan's Welding, LLC.

# EXHIBIT B

## ALMA ASSETS

(attached)

US1DOCS 5751983v8

| ITEM | MODEL #: | SERIAL #: |
|---|---|---|
| JOY CUTTING MACHINE | 16RB | 18219 |
| JOY CUTTING MACHINE (MINE #2) | 16RB | 17753 |
| FLETCHER ROOF BOLTER (MINE #1) | RRI | 90111 |
| LEE-NORSE ROOF BOLTER (MINE #1) | TD1-24 | 21663 |
| FLETCHER ROOF BOLTER | LTDO | 93078 |
| FACE POWER CENTER (MINE #1) | UNKNOWN | |
| SCHROEDER FACE DRILL (MINE #2) | 2000A-25 | 280 |
| LONG AIR-DOX FACE DRILL | TDF24B | 52-1313 |
| S&S SCOOP (MINE #2) | | 482 482-2194 |
| S&S SCOOP (MINE #2) | 105A | SH105677-51 |
| S&S SCOOP (MINE #2) | | 482 482-1732 |
| S&S SCOOP | | 482 |
| S&S SCOOP | | 480 480-1051 |
| S&S SCOOP | | 482 482-2078 |
| S&S SCOOP | | 482 482-1910 |
| 11 SETS NEW SCOOP BATTERIES | | |
| 8 SCOOP CHARGERS | | |
| L.L. MAC (MINE #2) THREE-WHEELER | | 139 |
| HIGHLAND FEEDER | | |
| 2000 KVA TRANSFORMER SUB-STATION | | |
| 3 TRANSFORMER SETS 667 | | 6947 |
| 3 TRANSFORMER SETS 250 | | 6946 |
| SUB-STATION COMPLETE (MINE #1) | | 6949 |
| SUB-STATION COMPLETE (MINE #2) | 1000KVA | 3301 |
| HIGH VOLTAGE CABLE (MINE #2) | 1000KVA | 3553-01 |
| 5' FAN (MINE #2) | | |
| JOY MFG. FAN (MINE #1) 5' HIGH PRESSURE | | SF9609 |
| 42' STACKER BELT 600' LONG (BUILT 6" CHANNEL) | | |
| 2000' UNDERGROUND BELT (4000 FT.-36") (400-2, PL-NEW) | | |
| 5' X 14' TABOR VIBE RATING SCREEN WITH SCREEN PLANT BLUE | | |
| 300 TPH STOKER PLANT (MODEL ON TRAILER A&T) | | |
| SHOP BUILDING (30' X 40') | | |
| 4 PERSONAL BUGGIES, 3 FOUR WHEELERS, 1 THREE WHEELER (NEW) | | |
| 1 USED THREE WHEELER | | |
| MINE OFFICES - ONE 12' X 60' TRAILER, ONE 8' X 40' BOX TRAILER | | |
| COAL BINS - ONE RAW COAL, ONE STOKER COAL W/ CONCRETE FLOOR | | |
| CATERPILLAR RUBBER TIRE LOADER | 980B | 89P2127 |
| CATERPILLAR RUBBER TIRE LOADER | 988A | 87A-8551 |
| CATERPILLAR OFF HIGHWAY ROAD TRUCK | 25DB | 25DB5051 |
| CATERPILLAR OFF HIGHWAY TRUCK | 33DB | 33DB-3108 |
| CATERPILLAR DOZER | D9H | 90V7729 |