## COAL PURCHASE AGREEMENT

THIS COAL PURCHASE AGREEMENT is entered into as of this 29th day of May, 2008 ("this Agreement"), between and among:  West Virginia Coal Venture I LLC, 2900 Linden Lane, Suite 300, Silver Spring, Maryland 20910, Fax (301) 495-9452 (the "Company"); Alma Energy, LLC, 59 Davis Branch Road, Stone, Kentucky, 41567 Fax (606) 427-0602 ("Alma"); and Pikeville Energy Group, LLC, 183 Tollage Creek, Pikeville, Kentucky 41501, Fax (703) 563-9461 ("Pikeville").

**WHEREAS,** The Company is the owner of the Glen Alum coal processing plant and rail load-out in Mingo County, West Virginia (the "Premises");

**WHEREAS,** Pikeville intends to sell coal from the Alma seam mined by Blackberry Energy LLC, a Contractor of Alma ("Blackberry"), at the Right Fork I, Right Fork II (Little Ty) and Netley Branch mines located in Pike County, Kentucky (the "Mines"), which coal will be mined under mineral leases assigned by Alma to Kentucky Coal Venture I LLC ("KCVI") in August 2006, and which leases are owned solely by KCVI, and mining rights granted by KCVI to Alma in that certain Settlement Agreement dated December 14, 2007, as amended and supplemented (the "Settlement Agreement"), entered into by, among others, Alma, KCVI and THC Kentucky Coal Venture I LLC ("THC") and approved by an Order of the United States Bankruptcy Court for the Eastern District of Kentucky (the "Bankruptcy Court") dated February 8, 2008 [Doc. No. 220], which Order was entered in Alma's pending Chapter 11 case, Case No. 07-70370;

**WHEREAS,** Pikeville wishes to sell coal, acquired from Blackberry and Alma, to the Company, delivered to the Premises, for the term hereinafter described, which coal Alma or Blackberry is currently or will be mining from the Mines; and

**WHEREAS,** The Company is willing to purchase Alma's coal pursuant to this Agreement and the terms and conditions contained herein.

**NOW, THEREFORE,** in consideration of the mutual covenants herein contained and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Company, Alma and Pikeville (collectively, the "Parties" and individually a "Party") agree with the intent to be bound as follows:

1. <u>Recitals are True and Correct</u>. The recitals contained in this Agreement are true and correct.

2. <u>Term</u>. Subject to the early termination provision of this Agreement, this Agreement shall be effective until December 31, 2008. This Agreement shall be automatically extended for the life of any current or future contracts executed between the Parties and then this Agreement shall be extended for continuous periods of 3 (three) months each, at the sole option of the Company, unless the Company cancels said Agreement at its sole and absolute discretion by giving ten (10) days written notice to Alma and Pikeville via a document faxed to the facsimile numbers set forth in the first full paragraph of this Agreement.

3. <u>Obligations of Alma and Pikeville</u>. Alma and Pikeville shall have the following obligations under this Agreement:

a.  Alma and/or Pikeville shall deliver to the Premises all the coal which Alma or any agent of Alma, including Blackberry, mines from the Mines, during the term of this Agreement, as may be extended pursuant to the terms hereof. If any coal is mined from the Mines and sold, shipped or delivered to anyone other than the Company, Alma and Pikeville shall be jointly and severally obligated to promptly pay the royalty payments due to THC under the Settlement Agreement, which agreement was approved by an Order of the Bankruptcy Court dated February 8, 2008 [Doc. No. 220], and pay said royalty payments directly to THC or its designee or $35.00 per ton, whichever is greater.

b.  Alma and Pikeville shall ensure that all shipments of coal to the Premises are delivered between 7:00 a.m. and 6:00 p.m. Monday through Saturday, excluding legal holidays, or as otherwise agreed to by the Parties in writing.

c.  Alma and/or Pikeville shall be responsible for all costs associated with the shipment of the coal from the Mines to the Premises.

d.  Alma and/or Pikeville agree that the coal from the Mines shall be sampled at the Premises by an independent entity selected by the Parties. The costs of sampling the coal shall be borne equally by the Company on the one hand, and Alma and Pikeville on the other hand.

e.  Alma and/or Pikeville shall be responsible for the payment of any and all fees due to the West Virginia Public Service Commission for all coal delivered to the Premises, including, but not limited to, the payment of the five cents ($0.05) per raw ton of coal trucked to the Premises, pursuant to this Agreement.

f.  Alma and/or Pikeville shall coordinate train schedules for any coal delivered to the Premises for shipment on coal purchase orders that it obtains with the consent of Ken Adamson, the Company's representative at the Premises, or another representative duly appointed by the Company.

g.  In the event that Alma and/or Pikeville desires to accept a coal purchase order for the coal deliverable to the Premises under this Agreement, Alma and/or Pikeville shall first provide a copy of a draft coal purchase order to the Company for its review and comments. Neither Alma nor Pikeville shall accept or agree to be bound by any purchase order for any coal subject to this Agreement unless and until the Company approves the same in writing and Alma and/or Pikeville ensure that all payments due and payable under any such purchase order are made directly to the Company. If Alma and/or Pikeville obtains said purchase order(s), and cannot deliver the specified amount of coal or quality in said order, any penalties and/or damages shall be borne and/or suffered by Alma and/or Pikeville. Any third-party purchaser of any coal sold and delivered under this Agreement shall hold the Company harmless and the purchase orders and/or contracts shall so provide.

h.  Under this Agreement, Alma and/or Pikeville shall deliver to the Premises coal with minimum specifications of DDPM of 20,000, ARNU of 140 and oxidation of 90%T. Coal shipped out of specification may be rejected by the Company at its sole option and discretion, with no obligation on the part of the Company to pay for such coal or any expenses associated with its delivery to the Premises. In the event that coal is rejected by the Company, the coal shall be stockpiled and sold to a third party, as directed by Alma and/or Pikeville with the

4

proceeds, less the royalty amount set out in Paragraph 3(a) above and Paragraph 4(b) below, washing and/or loading costs, being paid to Alma or Pikeville. If the coal is stockpiled for a period exceeding thirty (30) days, the coal shall become the property of the Company.

    i.    Alma shall allow representatives of the Company to visit and inspect the Mines at all reasonable hours. If an underground inspection is desired, the Company shall give Alma four (4) hours advance notice.

    j.    Alma shall indemnify and hold the Company harmless in case of any default by Alma under this Agreement or any other agreement (including a confirmed plan of reorganization in Alma's pending Chapter 11 case, Case No. 07-70370) to which the Company is or is not a signatory.

    k.    In the event that coal is delivered from the Mines to the Premises and is only loaded onto rail cars, without any processing by the Company, Alma and/or Pikeville agree to pay unto the Company a loading fee in the amount of Seven Dollars and Fifty Cents ($7.50) per ton of raw coal loaded. The aforementioned $7.50 loading fee per ton of raw coal is in additional to the royalty amounts set out in paragraph 3(a) above and paragraph 4(b) below.

    4.    <u>Obligations of the Company</u>.

    a.    The Company shall pay unto Alma and/or Pikeville One Hundred Twenty-Five Dollars ($125.00) per ton of clean coal delivered to the Premises. "Clean coal" shall be determined on a basis of reject being equal to Ash + ten percent (10%). For example, if 1,000 tons of coal is delivered to the Premises with an ash of fifteen percent (15%), Alma and/or Pikeville will be paid for 750 tons of clean coal [1000 tons x (100% - 25%)]. The definition of "Clean

5

Coal" herein may be modified by the Parties on a case by case basis only if the Parties agree to such modification, in writing. The weight of the coal delivered shall be determined by certified truck scales located at the Premises, equipped with an electronic recording unit to be purchased and calibrated by Alma and/or Pikeville, which unit shall become the property of the Company, upon installation.

      b.    The Company shall pay Alma and/or Pikeville on Wednesday for coal delivered to the Premises through Saturday of the proceeding week. Payments shall be made by wire transfer to an account designated by Alma and/or Pikeville. The Company shall be entitled to deduct from any payment due Alma and/or Pikeville under this Agreement: (1) any royalty payments due to THC under the Settlement Agreement, which was approved by an Order of the Bankruptcy Court dated February 8, 2008 [Doc. No. 220], and pay said royalty payments directly to THC or its designee; and (2) the seventy-five percent (75%) royalty assigned by Joe G. Street ("Street") and J.B. Roulett ("Roulett") to THC by paragraph 1 of that certain Agreement, Assignment and Consent to Assignment dated February 5, 2008 executed between and among KCVI, THC, Alma, Nathan J. Williams, Street and Roulett. The Company shall also be entitled to deduct from any payment due to Alma and/or Pikeville under this Agreement any other payments which it makes hereunder, which are the responsibility of Alma and/or Pikeville, such as lab fees, sampling fees and West Virginia Public Service Commission fees.

      c.    In the event that Alma and/or Pikeville obtains a bona fide purchase order for coal deliverable under this Agreement which exceeds a sales price of one hundred and forty dollars ($140.00) per ton, the Company shall

6

pay unto Alma and/or Pikeville an additional amount equal to fifty percent (50%) of the portion of the sales price which exceeds $140.00 per ton. This additional payment, if applicable, shall be paid within ten (10) days of receipt of payment by the Company for coal shipped pursuant to such a purchase order.

        d.    The Company shall be responsible for all reporting and paperwork required to be submitted to the West Virginia Public Service Commission as a result of the operations on the Premises.

        e.    The Company shall not co-mingle any coal delivered from the Mines to the Premises which is subject to a specific purchase order obtained by Alma and/or Pikeville and approved by the Company with any of the Company's coal, unless agreed to by the Parties, in writing. Any coal which is delivered from the Mines to the Premises which is not subject to a specific purchase order obtained by Alma and/or Pikeville and approved by the Company may be co-mingled with any coal owned by the Company.

    5.    <u>Coal Sampling</u>. The Company shall engage an independent lab, as agreed by the Parties, who will sample the coal delivered by Alma and/or Pikeville to the Premises. As set out above, sampling costs shall be borne equally by the Company on the one hand, and Alma and/or Pikeville on the other hand. If the Company decides to do the sampling by truck auger, the costs shall also be borne equally by the Company on the one hand, and Alma and/or Pikeville on the other hand.

    6.    <u>Independent Contractor</u>. Neither Alma, Pikeville nor anyone used or employed by Alma and/or Pikeville shall be deemed for any purpose to be an employee, agent, servant, representative, or agent of the Company. The

7

Company shall have no direction or control over Alma and/or Pikeville except in the results to be obtained under this Agreement. The Parties agree that neither this Agreement nor its implementation creates a partnership, joint venture, fiduciary relationship, joint employer, single employer, alter ego, agency relationship or successorship relationship between or among the Company, Alma and/or Pikeville.

7. <u>Taxes and Unemployment Compensation</u>. Alma and/or Pikeville shall pay and hereby assume exclusive liability for payment of any and all federal, state and other locally imposed taxes of any kind and nature, contributions, assessments, and taxes for unemployment insurance, old age benefits, annuities or other obligations which are measured by or based upon the compensation paid to Alma and/or Pikeville under this Agreement. Alma and/or Pikeville agree to reimburse the Company for any of the above taxes, contributions, assessments and obligations which by law the Company may be required to pay because of Alma's and/or Pikeville's failure to pay the same. Alma and Pikeville represent and warrant that they are operating under the unemployment compensation laws of the state where the work is being performed and are registered with the appropriate employer number.

8. <u>Laws, Rules and Regulations</u>. Alma, Pikeville and their contract truckers agree to substantially comply with all laws, rules and regulations, federal, sate or municipal, which are now or may in the future be applicable to the business of mining, storing, selling, shipping and transporting coal, and to equipment and personnel engaged in the operations covered by this Agreement.

9. <u>Shipping Tickets.</u> Alma and/or Pikeville shall provide the Company any and all truck shipping tickets to verify all coal that leaves the Mines. Alma and/or Pikeville shall also require each of their trucking contractors to supply the Company with a monthly report which shows all loads picked up at the Mines and all loads delivered for Alma and/or Pikeville, whether delivered to the Premises or otherwise.

10. <u>Indemnity by Alma and Pikeville</u>.

a. Alma and Pikeville shall be solely responsible for and shall hold harmless and indemnify the Company, its parent, subsidiaries and affiliates, and their directors, officers, employees, representatives and/or agents, from and against any and all claims, demands, causes of action, liabilities, losses, costs, damages and expenses, including reasonable attorneys fees, in connection with injuries (including death) to any and all persons (including, but not limited to, any third parties, employees of the Company, Alma and/or Pikeville and any subcontractors), damages to property and any black lung, workers' compensation or governmental claims or fines arising out of Alma's and/or Pikeville's performance under this Agreement. This indemnity shall apply whether or not such injury, death, property damage or liability was caused by, resulted from or was in any way connected with the actions of the Company, its parent, subsidiaries, and affiliates, or their directors, officers, employees, representatives and/or agents. Injuries to Alma and/or Pikeville or any person under Alma's and/or Pikeville's control sustained on the Premises of the Company shall be conclusively presumed to have been sustained in connection with or arising out of performance of Alma's and Pikeville's work under this

Agreement.  Alma's and Pikeville's general responsibility for damage to property or injury or death of a person includes damage, injury or death caused in part by any machine, tools, equipment or materials belonging to or furnished by the Company and used by Alma and/or Pikeville in the performance of this Agreement, or caused by any act of any employee of the Company while under the direction or control of Alma and/or Pikeville in carrying out any work to be performed under this Agreement.

    11.    <u>Insurance to be Provided by Alma</u>.

    a.    Alma and its sub-contractors, from the time of commencement of the work hereunder until the termination of this Agreement, shall provide at their own expense and maintain in effect with an insurance company satisfactory to the Company in its sole discretion the types and minimum amounts of insurance as specified in the attached insurance <u>Exhibit A</u>.

    b.    Prior to commencing services under this Agreement, Alma shall furnish certificates of insurance evidencing the insurance required hereunder and upon request shall furnish renewal certificates and true copies of the actual policies.  Each certificate shall provide that **<u>thirty (30) days' prior written notice</u>** shall be given to Company in the event of cancellation or material change in the policies.

    c.    **Named Additional Insureds**.  Each certificate shall specify that the Company, its parent, subsidiaries and affiliates are named as additional insureds in all policies, except workers' compensation.  Alma shall ensure that all insurance policies of its contractors, including, but not limited to, trucking

contractors, also name the Company as an additional insured on their policies as well.

        d.    **Waiver of Subrogation**.  All insurance policies shall be endorsed to provide that all underwriters and insurance companies of Alma and/or Pikeville waive any right of subrogation against the Company, its parent and affiliates, their directors, officers, employees, agents, representatives, agents, insurers, underwriters, and such other similar parties.

    12.    <u>Release of Claims by Alma and Pikeville</u>.

Alma and Pikeville hereby release the Company, KCVI, THC, Mr. Halle, and all other entities controlled by, owned in part by or associated with Mr. Halle, and their respective officers, directors, interest holders, shareholders, employees, agents, representatives and attorneys, and their respective heirs, successors and assigns, from and any all claims (including, but not limited to any claims, defenses or assertions of rescission, voidness, voidability, illegality, offset or the like), demands, actions, causes of action, rights, offsets, restitution, damages, lawsuits, liens, costs, losses, expenses or liabilities of any kind whatsoever, for any relief or remedy whatsoever, including monetary, injunctive or declaratory relief, or for reimbursement of attorneys' fees, costs or expenses, whether known or unknown, alleged or not alleged, contingent or non-contingent, liquidated or unliquidated, suspected or unsuspected, contingent or vested, from the beginning of the world to the date of this Agreement.  The foregoing release shall be effective immediately upon entry of an Order by the Bankruptcy Court approving this Agreement.

11

13. <u>Force Majeure</u>. Neither the Company, Alma nor Pikeville shall be liable to the other for any delays or damages or any failure to perform under this Agreement due, occasioned or caused by reason of federal or state laws, rules, regulations or orders of any public body or official purporting to exercise authority (except instances resulting from Alma's and/or Pikeville's unlawful acts, or due, occasioned or caused by strikes (other than strikes by Alma's and/or Pikeville's employees or subcontractors)), action of the elements, or causes beyond the control of the party effected and not reasonably foreseeable. Any delay due to any of the above causes shall not be deemed to be a breach of this Agreement.

14. <u>Alcohol and Drugs</u>. Alma, Pikeville and their sub-contractors acknowledge receipt of the Company's Alcohol and Drug Abuse Policy (the "Policy") and shall ensure that while performing services under this Agreement and while on property of the Company, Alma, Pikeville and their sub-contractors, employees, agents or representatives, shall comply with such policy. In the event of a violation of the Policy, the affected individual shall immediately cease performing services under this Agreement.

15. <u>Assignment</u>. Alma and/or Pikeville may not assign or subcontract this Agreement, or any part hereof, without the prior written consent of Company, which may be withheld at the Company's sole discretion. Any assignment or subcontracting permitted by the Company shall not relieve Alma and/or Pikeville of their obligations hereunder.

16. <u>Arbitration and Governing Law</u>. If any dispute should arise between or among the Company, Alma and/or Pikeville under the terms of this Agreement, then, as a condition precedent to any Party commencing a civil suit

or action in regard to such dispute, the dispute shall be submitted to non-binding arbitration or a non-binding alternative dispute resolution ("ADR") process. Any arbitration or ADR shall be governed by the procedures of the American Arbitration Association or the procedures of the Center for Public Resources, respectively, and shall be conducted in Charleston, West Virginia, unless otherwise agreed between and among Alma, Pikeville and the Company in writing. Although any decision regarding the dispute is non-binding, any decision regarding allocation of the costs of arbitration or ADR shall be binding and final between the Parties. This Agreement shall be governed by and construed in accordance with the laws of the State of West Virginia and the Parties agree that the federal and state courts in that jurisdiction shall be the only venue where any civil suit or action may be brought under this Agreement.

17. <u>Notices</u>. All notices shall be given in writing (including facsimile machine) to the Parties at the addresses on the first page of this Agreement. Each Party may designate in writing a new address for notices.

18. <u>Non-Waiver and Cumulative Remedies</u>. The failure of any Party to insist in any one or more instances upon strict performance of any of the provisions of this Agreement or to take advantage of any of its rights hereunder or the failure to object to the nature of performance or lack thereof of any other signatory to this Agreement shall not be construed as a waiver of any such provision or the relinquishment of any such right, but the same shall continue and remain in effect. If the waiver of any right is made, it shall be done expressly in writing by the Party entitled to the enforcement thereof. The rights and remedies

13

herein are cumulative and not exclusive of any rights or remedies to which Company may be otherwise entitled.

19.  **Severability of Provisions**.  If any provision in this Agreement is held invalid, the remaining provisions shall remain in full force and effect.

20.  **Headings**.  Paragraph or section headings in this Agreement are included for convenience of reference only and do not effect the meaning of any of the provisions hereof.

21.  **Survival of Obligations**.  All remedial, indemnification, and other obligations provided in this Agreement shall survive the termination, cancellation, or expiration of this Agreement.

22.  **Entire Agreement**.  This Agreement constitutes the complete and final expression of the agreement between the Parties relating to the sale and delivery of coal mined from the Alma seam at the Mines to the Premises.  With the exception of the Settlement Agreement, this Agreement supersedes all prior negotiations, proposals and agreements, either oral or written, between and/or among the Parties, and shall govern all transactions, rights, duties and remedies between the Parties under this Agreement, as they relate to the subject matter of this Agreement.  It is the intention of the Parties that this paragraph be construed as a merger clause and that this Agreement be construed as an integrated document.  No Party may modify this Agreement except by a written agreement signed by all the Parties.  Any attempt to waive the requirement that all modifications must be in writing shall have no effect unless such wavier is in writing and signed by an authorized representative of all Parties.

23. <u>Counterpart Execution</u>.  This Agreement may be executed in multiple counterparts, each one of which shall be deemed an original, but all of which shall be considered together as one and the same instrument.  Further, in making proof of this Agreement, it shall not be necessary to produce or account for more than one such counterpart.  Execution by a Party of a signature page hereto shall constitute due execution and shall create a valid, binding obligation of the Party so signing.  It shall not be necessary or required that the signatures of all Parties appear on a single signature page hereto.

24. <u>Facsimile/Imaged Signatures</u>.  A facsimile or imaged signature on this Agreement shall be deemed to be an original signature for all purposes.  In the event that a suit or a proceeding is brought to enforce the terms of this Agreement or any document executed in connection herewith, the plaintiff or movant shall not be required to produce or introduce into evidence a copy of this Agreement bearing original inked signatures of the Parties.  A facsimile or imaged signature on this Agreement shall suffice in any legal proceeding or action to enforce the terms hereof.

25. <u>Rules of Construction</u>.  The Parties acknowledge and agree that they and their respective legal counsel have independently reviewed and had the opportunity to make revisions to this Agreement and that the normal rules of contract construction, whereby ambiguities are to be resolved against the drafting party, shall be inapplicable to this Agreement.

26. <u>Bankruptcy Court Approval</u>.    This Agreement is subject to the approval of the Bankruptcy Court, which approval must be evidenced by entry of an Order on the docket in Case No, 07-70370.

27. <u>No Waiver of the Company's Right to File Documents in Alma's Chapter 11 Case</u>.  Nothing contained in this Agreement or any other agreement which the Parties have executed shall waive the right of the Company to file documents in Alma's Chapter 11 case, Case No. 07-70370, including, but not limited to, an objection to any Disclosure Statement or Plan of Reorganization filed by Alma.  In the event that the Bankruptcy Court declines to enter an Order confirming any Plan of Reorganization proposed by Alma prior to August 30, 2008, then, and only then, may KCVI, THC and/or Warren E. Halle file a Disclosure Statement and Plan of Reorganization in Alma's pending Chapter 11 case, Case No. 07-70370.

**IN WITNESS WHEREOF**, the Parties have executed this Coal Purchase Agreement as of the day and year first above written.

        ALMA ENERGY, LLC

        By: _____
            Steven Singleton, President
            Hereunto Duly Authorized

STATE OF WEST VIRGINIA
COUNTY OF _____, ss.

On May ____, 2008, personally appeared the above-named Steven Singleton, as the Chief Executive Officer, Chief Financial Officer and President of Alma Energy, LLC, and acknowledged the foregoing Coal Purchase Agreement to be his free act and deed in his said capacities and the free act and deed of said limited liability company.  Before me,

        _____
        Notary Public

        My commission expires: _____/_____/2____

PIKEVILLE ENERGY GROUP, LLC


By: _____
     Name: _____
     Title:   _____
     Hereunto Duly Authorized

STATE OF WEST VIRGINIA
COUNTY OF _____, ss.

    On May ____, 2008, personally appeared the above-named _____, as the _____ of Pikeville Energy Group, LLC, and acknowledged the foregoing Coal Purchase Agreement to be his/her free act and deed in his/her said capacity and the free act and deed of said limited liability company.  Before me,


_____
Notary Public

My commission expires:  _____/_____/2____



WEST VIRGINIA COAL VENTURE I LLC


By: _____
     Stephen N. Fleischman, Vice President
     Hereunto Duly Authorized

STATE OF MARYLAND
COUNTY OF MONTGOMERY, ss.

    On May ____, 2008, personally appeared the above-named Stephen N. Fleischman, as the Vice President of West Virginia Coal Venture I LLC, and acknowledged the foregoing Coal Purchase Agreement to be his free act and deed in his said capacity and the free act and deed of said limited liability company.  Before me,


_____
Notary Public

My commission expires:  _____/_____/2____

17

# EXHIBIT A

## INSURANCE EXHIBIT
## MINIMUM INSURANCE REQUIREMENTS FOR Alma

### Required Insurance Coverage

| | |
|---|---|
| Workers' Compensation | Statutory |
| Employers' Liability (per accident) | $1,000,000 |
| Commercial General Liability (per occurrence) Bodily Injury and Property Damage (Combined Single Limit) | $1,000,000 |
| Automobile Liability Bodily Injury & Property Damage (Combined Single Limit) | $1,000,000 |

### The following apply to all policies:

1. Company, its parent, subsidiaries and affiliates and their agents, directors, officers and employees, shall be included as additional insureds on all policies (except Workers' Compensation coverage)
2. All policies shall contain a Waiver of Subrogation in favor of Company, its parent, subsidiaries and affiliates and their agents, directors, officers and employees, and its insurers
3. Company shall receive thirty days written notice of cancellation or any material change
4. Coverage under all insurance required to be carried by Alma shall be primary insurance exclusive of any other existing valid and collectable insurance.
5. All policies described below shall have adequate territorial and navigation limits for the location of the work.
6. All insurance shall be with insurers acceptable to Company (insurer shall be a licensed or registered company in the state where contract operations are conducted and must have a Best's rating of at least B+7)

### A.  Workers' Compensation and Employers' Liability shall include:

1. Statutory Workers' Compensation for state of hire or operation including Federal Black Lung Benefits.
   <u>Work performed in West Virginia.</u> If work is to be performed in West Virginia, Alma's Workers' Compensation coverage shall be pursuant to a policy insuring its activities in West Virginia to the minimum extent required under West Virginia Law, and Alma shall provide certification of this provision to the Company.

      2.      Employers' Liability

**B. Commercial General Liability** (Occurrence Form) shall include:

1. Premises/Operations
2. Independent Contractors
3. Personal Injury
4. Products/Completed Operations (five years following completion)
5. Blanket Contractual Liability
6. Cross Liability/Severability of Interests
7. Any governmental claim
8. Defamation/libel/slander
9. Explosion, Collapse and Underground
10. Subsidence Coverage

**C. Comprehensive Automobile Liability** shall include

1. Owned Vehicles
2. Non-Owned vehicles
3. Hired Vehicles

Company reserves the right to require certified copies of any or all policies. The above minimum insurance requirements are subject to change at the discretion of Company.

Z:\Clients\Kentucky Coal Venture\Settlement Documents\Coal Purchase Agreement-FINAL-2008 May 29.doc