**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF KENTUCKY**
**Pikeville Division**

| | | |
|---|---|---|
| IN RE: | : | |
| | : | **Chapter 7** |
| **ALMA ENERGY, LLC** | : | **Case No: 07-70370** |
| | : | **Judge Joseph M. Scott** |
| Debtor | : | |
| _____ | : | |
| | : | |
| **PHAEDRA SPRADLIN, et al.,** | : | |
| | : | |
| Plaintiffs, | : | |
| | : | **Adversary Proceeding** |
| vs: | : | **No: 09-7005** |
| | : | |
| **DARRELL K. WILLIAMS, et al.,** | : | |
| | : | |
| Defendants. | : | |
| _____ | : | |

**MEMORANDUM OPINION**

In this matter Defendants, Pikeville Energy Group, LLC ("Pikeville"), Gary J. Richard ("Richard") and Banner Industries of N.E., Inc. ("Banner") (collectively, the "Pikeville Defendants") filed a Motion to Dismiss the Second Amended Complaint ("Motion to Dismiss") (AP Doc. 491),[1] along with supporting memoranda (AP Docs. 524 & 548-2).   The Pikeville Defendants base their Motion to Dismiss on lack of subject-matter jurisdiction.   Plaintiffs, Phaedra Spradlin ("Spradlin"), as chapter 7 Trustee of Debtor, Alma Energy, LLC ("Alma"), and THC Kentucky Coal Venture I LLC ("THC") filed an Objection (Doc. 521) to the Motion to Dismiss.   Thereafter, prosecution of the Motion to Dismiss was held in abeyance pending mediation among the various parties involved in this Adversary Proceeding.   On August 9, 2011, a report (AP. Doc. 549) was filed by the mediator indicating that settlement was hopeless.   Pursuant to the Court's Order Lifting Abeyance of Proceedings and Scheduling Multiple Deadlines ("Order Lifting Abeyance") (AP Doc.

---

[1] References to the docket in this Adversary Proceeding appear as (AP Doc. ___).   References to the docket in the Debtor's main bankruptcy case appear as (Bk. Doc. ___).

550) entered August 25, 2011, the parties have filed briefs (AP Docs. 556, 557 & 559), and the

matter was submitted to the Court for decision on the record on September 9, 2011.

This Court has jurisdiction to determine whether it has subject-matter jurisdiction. *Cain*

*P'ship, Ltd. v. Pioneer Inv. Servs., Co. (In re Pioneer Inv. Servs., Co.)*, 21 F.3d 428, 1994 WL

134683, at *3 (6th Cir. Apr. 14, 1994) (table decision); *see also Rhiel v. Cent. Mortg. Co. (In re*

*Kebe)*, 444 B.R. 871, 873 (Bankr. S.D. Ohio 2011).   The following constitutes the Court's findings

of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052.

## PRELIMINARY ISSUE

<u>Whether the Pikeville Defendants' attack on subject-matter jurisdiction is a facial or factual</u>

<u>attack</u>.   Determining this question impacts whether the Court takes all of the Plaintiffs' allegations

as alleged in the complaint as true.   "A Rule 12(b)(1) motion can either attack the claim of

jurisdiction on its face, in which case all allegations of the plaintiff must be considered as true, or it

can attack the factual basis for jurisdiction, in which case the trial court must weigh the evidence

and the plaintiff bears the burden of proving that jurisdiction exists."   *DLX, Inc. v. Kentucky*, 381

F.3d 511, 516 (6th Cir. 2004), *cert denied,* 544 U.S. 961, 125 S. Ct. 1733, 161 L. Ed. 2d 603

(2005); *see also U.S. v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994) ("A facial attack is a challenge to

the sufficiency of the pleading itself. . . .   A factual attack, on the other hand, is not a challenge to

the sufficiency of the pleading's allegations, but a challenge to the factual existence of subject

matter jurisdiction.").

According to the treatise Federal Practice & Procedure:

When the argument is that the allegations of subject matter jurisdiction are insufficient—that is, when there is a "facial challenge" to subject matter jurisdiction—the court takes the allegations of the complaint as true.   On the other hand, when the party opposing jurisdiction challenges the accuracy of the factual allegations and demonstrates facts showing a lack of jurisdiction—that is, when there is a "factual challenge"—the court may go beyond the allegations of the complaint and look to relevant evidence, including affidavits and, when appropriate, testimony.

5B Charles Alan Wright, et al., FED. PRAC. & PROC. CIV. § 3522 (3d ed. 2011); *see also Am. Tissue, Inc. v. Arthur Andersen, L.L.P.*, 275 F. Supp. 2d 398, 403-04 (S.D.N.Y. 2003) ("It is well ingrained in the law that subject-matter jurisdiction can be called into question either by challenging the sufficiency of the allegation or by challenging the accuracy of the jurisdictional facts alleged.") (quoting *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc.*, 484 U.S. 49, 68, 108 S. Ct. 376, 98 L. Ed. 2d 306 (1987) (Scalia, J., concurring in part and concurring in the judgment)); *Robinson v. Gov't. of Malaysia*, 269 F.3d 133, 140 (2d Cir. 2001) (in a Rule 12(b)(1) motion the defendant may challenge either the legal or factual sufficiency of the plaintiff's assertion as to jurisdiction, or both). "If the defendant challenges only the legal sufficiency of plaintiff's jurisdictional allegations, the court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff." *Id.*

In the Second Amended Complaint ("AP Doc. 416), Plaintiffs assert that this Court has jurisdiction of this Adversary Proceeding pursuant to 28 U.S.C. §§ 157(a) and 1334(b), and Local Rule 83.12 of the United States District Court for the Eastern and Western Districts of Kentucky. Plaintiffs also assert that this is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (C) and (O). The Pikeville Defendants do not challenge any of the facts upon which the Plaintiffs base jurisdiction but challenge the Plaintiffs' legal argument that the facts as alleged are a sufficient basis for subject-matter jurisdiction. The Pikeville Defendants are, therefore, making a facial attack on subject-matter jurisdiction. As such, the Court takes all facts alleged in the complaint as true. *See Abbott v. Michigan*, 474 F.3d 324, 328 (6th Cir. 2007) ("Because the district court made essentially no factual findings in deciding that it lacked jurisdiction, the defendants' motion on this issue is properly treated as an attack on the claim of jurisdiction on its face."); *DLX, Inc.*, 381 F.3d at 516 (same).

## FACTS RELEVANT TO SUBJECT-MATTER JURISDICTION

The tortured history of this Adversary Proceeding is a scrambled maze of facts and allegations involving the original Complaint (AP Doc. 1) and a First Amended Complaint (AP Doc. 73) before finally getting to the Second Amended Complaint.   The history, however, is necessary to obtain a complete understanding of the jurisdictional facts as follows:

1.       On August 9, 2006, Alma entered into certain agreements ("KCVI Agreements") with Warren A. Halle ("Halle") and/or entities controlled by Halle.   One of the KCVI Agreements was a Limited Liability Company Agreement entered into between Alma and THC to form Kentucky Coal Venture I, LLC ("KCVI").   THC is the designated managing member of KCVI. THC is owned by Halle.   (Second Amended Complaint, ¶¶ 25-28).

2.       Pursuant to the Limited Liability Company Agreement, Alma was to and did contribute to KCVI all of Alma's rights in certain leases known as the "Pocahontas Leases." (Second Amended Complaint ¶ 31; Complaint ¶¶ 20-21).

3.       Located on the premises subject to the Pocahontas Leases, are three coal mines known as "Right Fork," "Little Ty" and "Netley."   (Second Amended Complaint ¶ 23; Complaint ¶ 23).

4.       Under the KCVI Agreements, Alma was given the exclusive right to mine and sell all coal from mineral interests that KCVI had acquired from Alma, and from any future coal properties acquired by KCVI during a period of twenty years in and around Pike County, Kentucky.   (Complaint ¶ 23).

5.       THC was to and did contribute to KCVI funding in the amount of $4,704,554.75. (Second Amended Complaint ¶ 29).

6.       In 2007, Alma alleged that KCVI was in default, and KCVI alleged Alma was in default, under the KCVI Agreements.   (Complaint ¶ 25).

7.       On May 22, 2007, KCVI filed suit against Alma and others in the United States District Court for the District of Maryland styled, *Kentucky Coal Venture I, LLC v. Alma Energy, LLC, et al.*, Case No. 8:07-cv-01339-AW ("Maryland Action").   In the Maryland Action, KCVI alleged injuries against Alma and other based on breach of contracts, fraudulent acts, knowing misrepresentations, tortious interference, bad faith accounting practices, and other actionable conduct.   (Second Amended Complaint ¶ 34).

8.       On August 13, 2007 ("Petition Date"), Alma filed a voluntary chapter 11 petition, Case No. 07-70370 ("Bankruptcy Case") creating Alma's Bankruptcy Estate.

9.       On the Petition Date, Nathan Williams ("N. Williams") was the sole member and manager of Alma.   (Second Amended Complaint ¶¶ 21 & 63).   However, Darrell Williams ("D. Williams") also exercised control over Alma.   (Second Amended Complaint ¶ 64).

10.      On August 20, 2007, Alma filed Adversary Proceeding No. 07-7025 ("AP 07-7025") against KCVI, THC, Halle (KCVI, THC and Halle are referred to collectively as the "Halle Entities"), and others.   In AP 07-7025, Alma sought damages and injunctive relief, and alleged that from August 9, 2006, forward, the Halle Entities and other named defendants conspired and engaged in a course of conduct that gave rise to Alma's claims and causes of action for fraud, tortious interference with contractual relations, breach of contract, and fraudulent transfers.

11.      On September 29, 2007, Alma filed Adversary Proceeding No. 07-7032 ("AP 07-7032") against KCVI and Halle, seeking damages and injunctive relief on account of alleged violations of the automatic stay provisions of § 362 of the Bankruptcy Code.

12.     On December 14, 2007, the parties involved in the Maryland Action, AP 07-7025, and AP 07-7032 negotiated and settled those pending actions.[2]   A Settlement Agreement was entered into on December 14, 2007 ("2007 Settlement Agreement").  [3]

13.     On Alma's motion, as supplemented (Bk. Docs. 184, 202 & 207), the 2007 Settlement Agreement was approved by order of this Court (Bk. Doc. 220) entered in the Bankruptcy Case on February 8, 2008.

14.     Alma entered into the 2007 Settlement Agreement for the purpose of separating assets between Alma and the Halle Entities whereby Alma was to operate properties in Kentucky without interference from Halle, and Halle was to operate properties in West Virginia without interference from Alma.   (Complaint ¶ 45).

15.     The 2007 Settlement Agreement also required Alma to pay royalties to THC based upon the gross sales price of all coal mined and sold from the premises subject to the Pocahontas Leases.   (Second Amended Complaint ¶ 39; 2007 Settlement Agreement ¶¶ 18 & 19).

16.     This Adversary Proceeding was originally filed on May 4, 2009, by Alma in its capacity as the chapter 11 debtor-in-possession, against multiple defendants including the Halle Entities.[4]   The Complaint asserted multiple claims against the Halle Entities, most of which were based on breach of and violation of the spirit and intent of the 2007 Settlement Agreement, as follows:

---

[2] The 2007 Settlement Agreement also settled a proceeding pending in Pike Circuit Court styled, *THC Kentucky Coal Venture I LLC v. Nathan Williams*, Case No. 07-CI-00910.

[3] A copy of the 2007 Settlement Agreement is attached as Exhibit A to the original Complaint filed in the Adversary Proceeding.

[4] In addition to the Halle Entities named above, the following additional entities owned or controlled by Halle were named as defendants in the Complaint:   Kentucky Coal Venture II, LLC, THC Kentucky Coal Venture LLC, West Virginia Coal Venture I LLC, KWV Operations, LLC. Other defendants name in the original Complaint were: Consol Capital LLC, Jodi L. Waber, Tony Gannacone III, Pikeville, Blackberry Energy, LLC ("Blackberry"), Nathan's Welding, LLC ("Nathan's Welding"), D. Williams and N. Williams.   Blackberry, Nathan's Welding, D. Williams and N. Williams are referred to collectively as the "Williams Defendants."

*     Fraud in the inducement to Alma, D. Williams and N. Williams for them to enter into the 2007 Settlement Agreement (Count I)
*     Tortious interference with relationships and contracts between Alma and Pikeville and the exercise of Alma's rights under the 2007 Settlement Agreement (Count II)
*     Breach of implied covenant of good faith and fair dealing as to the 2007 Settlement Agreement (Count III)
*     Actual Fraud in inducing Alma, D. Williams, N. Williams and Nathan's Welding into entering into the 2007 Settlement Agreement (Count IV)
*     Breach of the 2007 Settlement Agreement (Count V)
*     Civil conspiracy (Count VI)
*     Promissory estoppel (Count VII)
*     Trade libel (Count VIII); and
*     Injunctive relief (Count IX)

17.    On May 20, 2009, Alma's chapter 11 Bankruptcy Case was converted to one under chapter 7 (Bk. Doc. 700), and Spradlin was appointed as the chapter 7 trustee.

18.    On June 23, 2009, an order (AP Doc. 53) was entered by which Pikeville and the Williams Defendants were realigned as plaintiffs with respect to the original Complaint.

19.    On September 9, 2009, Spradlin and the Halle Entities entered into the 2009 Settlement Agreement (Bk. Doc. 780-2) to settle Alma's claims and causes of action asserted against the Halle Entities in this Adversary Proceeding.

20.    Pursuant to the 2009 Settlement Agreement, in exchange for $200,000, Alma transferred to THC certain leases and personal property and all of Alma's

> claims and causes of action . . . arising before and after the date of this Agreement of any kind, character, type, nature and description, in law or in equity, if any against Darrel [sic] K. Williams, Nathan J. Williams, Nathan's Welding, LLC, Blackberry Energy, LLC, Paul Stewart Snyder, James P. Pruitt, Jr., Pruitt and de Bourbon Law Firm, D. Hayden Fisher, Gary Richard, Brett Morehouse, Edward Green, William S. Detherage, BSD 1, LLC, Jones, Pack & Associates, Harold Meeks; Peycon Energy, LLC, Charles Hill, Charles J. Lisle, HIGHMAF, LLC, Exigent Leasing Limited Partnership, Exigent Ventures, and Pikeville Energy Group, LLC (collectively, the "Putative Defendants"), whether asserted or unasserted, known or unknown, anticipated or unanticipated, suspected or unsuspected, absolute, fixed, conditional or contingent, matured or unmatured, liquidated or unliquidated in amount, due or to become due and whether arising in contract, tort, or otherwise, all such claims and causes of action shall be deemed to have been assigned to THC.

(2009 Settlement Agreement ¶ 8).    Spradlin agreed that THC could assert and litigate any claims against the Putative Defendants in her name.    (Second Amended Complaint ¶ 43; 2009 Settlement Agreement ¶¶ 7, 8).

21.    In the 2009 Settlement Agreement, Spradlin agreed "that any and all proceeds with respect to the litigation and/or liquidation of such claims and causes of action [against the Putative Defendants] shall belong to THC and only THC."    (Second Amended Complaint ¶ 43; 2009 Settlement Agreement ¶ 8).

22.    Finally, the 2009 Settlement Agreement also provided that the Halle Entities "will jointly and severally indemnify and hold harmless the Trustee from and against any and all Claims . . . by a third party resulting from, arising out of or incurred in connection with the [Halle Entities] exercising their rights bought and assigned under this Agreement."    (2009 Settlement Agreement ¶ 9).

23.    The 2009 Settlement Agreement was approved by this Court pursuant to an order ("2009 Settlement Order") entered October 30, 2009 (Bk. Doc. 842).    The 2009 Settlement Order became a final order, after appeals, on March 1, 2010.    (Second Amended Complaint ¶ 49).

24.    On April 12, 2010, a First Amended Complaint was filed in which THC and Spradlin, solely in her capacity as the Chapter 7 Trustee of Alma Energy, LLC, were the named Plaintiffs.    Defendants named in the First Amended Complaint who are relevant to the Motion to Dismiss are Pikeville and Richard.[5]

25.    On November 11, 2010, the Second Amended Complaint, telling a substantially different account than the original Complaint of Alma's failed reorganization and demise, was filed

---

[5] Also named as defendants again were the Williams Defendants.    Named as new defendants were Peycon Energy, LLC ("Peycon"), D. Haden Fisher ("Fisher"), Brett Morehouse ("Morehouse"), Charles Hill ("Hill"), and Steve Singleton ("Singleton").

by THC and Spradlin.   Defendants named in the Second Amended Complaint who are relevant to the Motion to Dismiss are Pikeville, Richard and Banner.[6]

26.    The Second Amended Complaint contains the following eight counts against the Pikeville Defendants[7] based on the actions alleged below:

* Breach of fiduciary duty against Pikeville and Richard (Count I)
* Aiding and abetting breach of fiduciary duty against Richard, Pikeville and Banner (Counts II, III, VII and VIII)
* Conversion against Richard and Banner (Count IV)
* Unjust enrichment claim against Banner (Count V)
* Civil conspiracy claim against Pikeville, Banner and Richard (Count VI)

27.    On March 20, 2008, N. Williams organized Blackberry for the purpose of mining and removing Alma's coal from the premises involving the Pocahontas Leases, and selling the coal to CMB Group, LLC, a predecessor of Pikeville.   (Second Amended Complaint ¶¶ 74, 75, 92, 93 & 94).

28.    On April 4, 2008, Pikeville was formed to take the place of CMB Group and was "formed to, among other things, finance Blackberry to mine [Alma's] coal and to purchase and then re-sell [Alma's] coal for a profit."   (Second Amended Complaint ¶¶ 93 & 95).

29.    The members of Pikeville were Richard, D. Hayden Fisher ("Fisher") and Peycon Energy, LLC ("Peycon").   Richard was the managing member of Pikeville.   Brett Morehouse ("Morehouse") and Charles Hill ("Hill") were the members of Peycon.   (Second Amended Complaint ¶¶ 97 & 100).

30.    On April 25, 2008, Blackberry and Pikeville entered into a Mineral Purchase Agreement and Order ("Mineral Purchase Agreement") whereby Blackberry promised to sell to Pikeville all of the merchantable coal from the premises subject to the Pocahontas Leases owned

---

[6] Also named as defendants again were Peycon, Morehouse and Hill.   Default Judgments have been entered against Peycon (AP Doc. 103) and Hill (AP Doc. 102).   Agreed orders of dismissal have been entered with respect to Fisher (AP Doc. 201) and Singleton (Doc. 99).   Morehouse has filed a timely motion for summary judgment (AP Doc. 595).

[7] Plaintiffs' claims against the Williams Defendants have been settled.   (Second Amended Complaint ¶¶ 54-57).

by the Debtor at $64 per ton commencing on June 1, 2008. (Second Amended Complaint ¶¶ 120, 121 & Ex. 5).

31.     On June 1, 2008, Alma, Blackberry and Nathan's Welding, LLC ("Nathan's Welding") (another entity owned and controlled by N. Williams), entered into an Interim Mining and License Agreement ("Interim Mining Agreement"). Pursuant to the Interim Mining Agreement, Alma gave Blackberry and/or Nathan's Welding, the right to mine, remove, excavate, stockpile, load and sell the coal from certain leased premises of Alma. (Second Amended Complaint ¶¶ 122 & 123).

32.     At the time the contracts were entered into involving the mining and sale of coal subject to the Pocahontas Leases, which right was owned by Alma as a Debtor-in-Possession, such transactions had not been authorized by this Court. (Second Amended Complaint ¶¶ 81-83).

33.     On June 16, 2008, the Court entered an Order Approving Interim Contract Mining Agreement ("Mining Order") (Bk. Doc. 401).

34.     According to the Halle Entities, the scheme whereby Blackberry mined Alma's coal and then sold it to Pikeville for a set price of $64 per ton allowed Blackberry and Pikeville to sell the coal at higher prices and to profit at the expense and exploitation of Alma. (Second Amended Complaint ¶ 132-36).

35.     The Plaintiffs further asserts against Banner and Richard allegations that Richard deposited into Banner funds obtained from investors that were intended to fund the Alma/Blackberry/Pikeville venture. (Second Amended Complaint ¶¶ 105-13).

36.     The Plaintiffs assert that Richard was able to divert funds to Banner because Richard claimed to be the managing member of Pikeville and Richard was the principal owner, President and a director of Banner. (Second Amended Complaint ¶ 111).

37.     In a confusing allegation after alleging that the Alma/Blackberry/Pikeville venture was a scheme to exploit Alma, the Plaintiffs assert that had Richard not diverted funds from the Alma/Blackberry/Pikeville venture, then that partnership would have continued to operate, as if that would have been good for Alma.   (Second Amended Complaint ¶ 110).

38.     On January 7, 2011, the present Motion to Dismiss was filed.

39.     Pursuant to an Assignment of a Portion of Any Recovery in Adversary Proceeding No. 09-7005 to the Bankruptcy Estate of Alma Energy, LLC ("Alma Assignment") dated February 2, 2011, THC assigned to Spradlin for the benefit of the Alma Bankruptcy Estate the greater of "(i) the first $45,000 from; or (ii) three percent (3.0%) of any recovery of cash or other assets(s) . . . , with regard to any remaining claims and causes of action assigned by the [2009] Settlement Agreement."   (Objection, Ex. 2).

40.     On March 16, 2011, Spradlin filed the Trustee's Final Report (Doc. 974) and notice of final report (Doc. 975).   According to the Trustee's Final Report, allowed general unsecured claims total $2,152,979.45, and the pool of funds currently available to be distributed to them totals $125,639.05.   As of the date of the report, it is anticipated that general unsecured creditors will receive a dividend of 5.8 percent.   (Trustee's Final Report, Ex. D).

41.     An additional $45,000 paid into the Bankruptcy Estate could, by this Court's calculation, result in a dividend of 7.9% being paid to general unsecured creditors.   An increase of 2.1% over the current 5.8% dividend.

42.     None of the Pikeville Defendants filed a proof of claim in the Bankruptcy Case.

43.     From the above facts, and particularly from the review of the allegations asserted in the original Complaint and those asserted in the Second Amended Complaint, the Court notes that this Adversary Proceeding is substantially and materially different than the proceeding pending before the Court when the original Complaint was filed.

**ARGUMENTS OF PARTIES**

In support of their Motion to Dismiss the Second Amended Complaint, the Pikeville Defendants argue that this Adversary Proceeding is a non-core, unrelated proceeding and, as such, it must be dismissed for lack of subject-matter jurisdiction.   The Pikeville Defendants first attack Plaintiffs' assertion that this is a core proceeding.   Plaintiffs are relying on 28 U.S.C. § 157(b)(2)(A) "matters concerning the administration of the estate," (C) "counter-claims by the estate against persons filing claims against the estate," and (O) "other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship, except personal injury tort or wrongful death claims."   According to the Pikeville Defendants, subsections (A) and (O) are inapplicable because they relate to administering the bankruptcy estate and its assets and there is no active administration with respect to Alma's Bankruptcy Estate.   The Pikeville Defendants argue that subsection (C) is inapplicable because none of these defendants have filed a proof of claim against Alma's Bankruptcy Estate; and it is, therefore, impossible for the Adversary Proceeding to be a counterclaim to any proof of claim.

Further, in their Supplemental Memorandum, the Pikeville Defendants assert that the Supreme Court in *Stern v. Marshall*, ___ U.S. ___, 131 S. Ct. 2594 (2011) "held that it was unconstitutional for the Bankruptcy Court to enter final judgment on a state law counterclaim asserted in response to a non-dischargeability complaint and proof of claim."   (Supplemental Memorandum, AP Doc. 548-2 at 3).

According to the Pikeville Defendants, this proceeding is also unrelated to the Bankruptcy Case, but if this Court finds that the Adversary Proceeding is related, the Pikeville Defendants request that the Court abstain from hearing this controversy pursuant to 28 U.S.C. § 1334(c)(1).

In response, the Plaintiffs assert that "any claims and causes of action arising as a result of a trustee's or DIP's post-petition dealings and transactions with a defendant are core."

(Objection at 2).    According to Plaintiffs all of the transactions and activities that are the subject of the Adversary Proceeding occurred post-petition in connection with mining activities authorized by the Court's Mining Order.    Plaintiffs further allege that the Pikeville Defendants were involved in Alma's post-petition coal mining operations and all of the claims and causes of action asserted against the Pikeville Defendants relate to those operations.    Therefore, the claims and causes of action asserted in the Second Amended Complaint are all core.[8]

Even if the claims and causes of action are non-core, Plaintiffs argue that they are at least "related to" proceedings because THC has assigned a portion of any recovery against the Pikeville Defendants to the Alma Bankruptcy Estate.    Therefore, the outcome of the Adversary Proceeding could conceivably affect the Bankruptcy Estate by resulting in a larger distribution to creditors of the Bankruptcy Estate.

## ISSUES

I.    Whether a Court can lose subject-matter jurisdiction?

II.    Whether this Court has subject-matter jurisdiction?
    a.  Whether this Adversary Proceeding is at least a "related to" proceeding.
        i.  Whether Spradlin's sale to THC of Spradlin's right to sue affects the "related to" status of this Adversary Proceeding.
        ii.  Whether the reassignment to Alma's Bankruptcy Estate of a small portion of THC's potential recovery in this Adversary Proceeding affects "related to" status.
    b.  If we determine that the Court has at least "related to" jurisdiction, does the Court have the ability to enter a final order in this Adversary Proceeding?

III.    If this Court has subject-matter jurisdiction, should it abstain?

---

[8] Interestingly, during their tenure as defendants in this Adversary Proceeding, the Halle Entities filed a motion to dismiss (AP Doc. 20) based on their assertion that this Adversary Proceeding was a noncore proceeding because the allegations in the Complaint were based on purely state law causes of action.   The Halle Entities further argued that even if this Adversary Proceeding was a "related to" proceeding that the Court should abstain.   A hearing was never held on this motion as the case was held in abeyance pending certain appeals in the Bankruptcy Case and the 2009 Settlement Agreement was entered into between the Halle Entities and Spradlin.

**LAW AND ANALYSIS**

The Motion to Dismiss is filed pursuant to Federal Rule of Civil Procedure 12(b)(1)[9] for

lack of subject-matter jurisdiction.   "If the court determines *at any time* that it lacks subject-matter

jurisdiction, the court must dismiss the action."   FED. R. CIV. P. 12(h)(3) (emphasis added).

I.    The case law is not settled as to the question of whether a court can lose
subject-matter jurisdiction.

There have been substantial changes in the Complaint filed in this adversary proceeding.

There have also been substantial changes in the parties to this adversary proceeding.   Alma, the

original plaintiff was replaced by Spradlin upon Alma's conversion to chapter 7.   Some

defendants have been dismissed on the basis of settlements reached, default judgments have

been rendered against some defendants, and new defendants have been added.   Most

significantly, THC, once a defendant, purchased the rights of Alma and is now the real plaintiff

proceeding in the name of Spradlin against the Pikeville Defendants and others.   But for the

recent assignment from THC back to Alma's Bankruptcy Estate of a minimal amount of the

potential recovery in this Adversary Proceeding, Spradlin is a mere figurehead in the controversy.

The Court had at least "related to" jurisdiction and, therefore, subject-matter jurisdiction at

the time Alma's Complaint was filed against the original fifteen defendants.   However, based on

the substantial changes noted above, the Court must consider whether it can lose subject-matter

jurisdiction?   The case law is not settled on this issue.   *Compare Roy v. Navy Fed Credit Union*

*(In re Roy)*, Bankr. No. 09-2972, Adv. No. 10-24, 2010 WL 2928463 (Bankr. N.D. W. Va. July 26,

2010) ("The fact that the Debtors' lawsuit against creditor will no longer impact their bankruptcy

estate . . . does not mean that the court has lost subject matter jurisdiction . . . . Once a bankruptcy

court has subject matter jurisdiction over an adversary proceeding, that jurisdiction is not divested

by subsequent events.") (citing *Freeport–McMoRan, Inc. v. K N Energy, Inc.,* 498 U.S. 426, 428,

---

[9] Federal Rule of Civil Procedure 12 is made applicable to bankruptcy proceedings by Federal
Rule of Bankruptcy Procedure 7012.

111 S. Ct. 858, 112 L. Ed. 2d 951 (1991) ("[I]f jurisdiction exists at the time an action is commenced, such jurisdiction may not be divested by subsequent events.")) and *Hamlin Props., Ltd. v. PAMI Sept., LLC (In re Hamlin Props., Ltd.)*, 413 B.R. 540 (Bankr. N.D. Tex. 2009) (once bankruptcy court has jurisdiction, an intervening event of dismissal of the underlying bankruptcy case does not divest the court of jurisdiction, and it is within the court's sound discretion to retain jurisdiction after considering factors of economy, convenience, fairness and comity) *with Boyer v. Conte (In re Import & Mini Car Parts, Ltd., Inc.)*, 200 B.R. 857 (Bankr. N.D. Ind. 1996) ("Jurisdiction requires something more than the hovering shadow of an earlier bankruptcy. . . . [T]he court must also be mindful of the possibility that, even though it may have acquired jurisdiction over a particular controversy at one point in time, it may lose that jurisdiction because of subsequent events. . . .   [T]he bankruptcy court should satisfy itself that it continues to have jurisdiction at every stage of the litigation.") and *Dierkes v. Crawford Orthodontic Care, P.C. (In re Dierkes)*, Bankr. No. 05-60983-MGD, Adv. No. 05-06022-MGD, 2007 WL 5734794 (Bankr. N.D. Ga. Mar. 22, 2007) (bankruptcy court lost subject-matter jurisdiction over adversary proceedings once chapter 7 bankruptcy case was dismissed because trustee had abandoned asset to debtor and any recovery by debtor as a result of the adversary proceeding would not be distributed to the creditors of debtor's bankruptcy estate).

Given (i) the inconsistencies in the case law, (ii) the Court's duty to consider its jurisdiction at any time, (iii) the fact that this Adversary Proceeding is substantially different than when originally filed, and (iv) the recent evidence by the Supreme Court in *Stern v. Marshall*, ___ U.S. ___, 131 S. Ct. 2594 (2011) that the Supreme Court is in a posture to narrow a bankruptcy court's jurisdiction rather than expand its jurisdiction, the Court finds that even if this Court had subject-matter jurisdiction at the beginning of this Adversary Proceeding, that is not a sufficient basis upon which to continue exercising jurisdiction.   The Court must consider whether under these changed circumstances it retains jurisdiction.

II.     The Court no longer has subject-matter jurisdiction over this adversary
        proceeding.

"A defendant challenging subject-matter jurisdiction under Civil Rule 12(b)(1) may raise

this defense by motion, but it does not have the burden of demonstrating a lack of jurisdiction.

Instead, "the *plaintiff* has the burden of proving jurisdiction in order to survive the motion.'"    *Rhiel*

*v. Cent. Mortg. Co. (In re Kebe)*, 444 B.R. 871, 875 (Bankr. S.D. Ohio 2011) (quoting *Rogers v.*

*Stratton Indus., Inc.*, 798 F.2d 913, 915 (6th Cir. 1986)) (emphasis in original).   The Plaintiffs'

burden is to establish jurisdiction by a preponderance of the evidence.   *See Richardson v.*

*Huntington Nat'l Bank (In re Cyberco Holdings, Inc.)*, 382 B.R. 118, 125-26 (Bankr. W.D. Mich.

2008); *Moyer v. ABN Amro Mortg. Grp., Inc. (In re Feringa)*, 376 B.R. 614, 616 (Bankr. W.D. Mich.

2007).

A bankruptcy court's jurisdiction over a proceeding involving nondebtors is to be

determined solely by 28 U.S.C. § 1334(b).   *Michigan Emp't Sec. Comm'n v. Wolverine Radio*

*Co., Inc.*, 930 F.2d 1132, 1140 (6th Cir. 1991).   Section 1334 provides:

> (a) Except as provided in subsection (b) of this section, the district court shall
> have original and exclusive jurisdiction of all cases under title 11.

> (b) Notwithstanding any Act of Congress that confers exclusive jurisdiction on
> a court or courts other than the district courts, the district courts shall have original
> but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising
> in or related to cases under title 11.

28 U.S.C. § 1334(a) & (b).   Explaining a bankruptcy court's jurisdiction under § 1334, the Sixth

Circuit has stated:

> Section 1334 lists four types of matters over which the district court has
> jurisdiction: (1) "cases under title 11," (2) "proceedings arising under title 11," (3)
> proceedings "arising in" a case under title 11, and (4) proceedings "related to" a
> case under title 11.   The first category refers merely to the bankruptcy petition
> itself, filed pursuant to 11 U.S.C. §§ 301, 302, or 303.   Accordingly, the action
> before us is not a "case under title 11" within the meaning of section 1334(a). . . .

> For the purpose of determining whether a particular matter falls within
> bankruptcy jurisdiction, it is not necessary to distinguish between the second, third,
> and fourth categories (proceedings "arising under," "arising in," and "related to" a
> case under title 11).   These references operate conjunctively to define the scope

of jurisdiction.    Therefore, for purposes of determining section 1334(b) jurisdiction, it is necessary only to determine whether a matter is at least "related to" the bankruptcy.

. . . [W]e [have] noted that the circuit courts have uniformly adopted an expansive definition of a related proceeding under section 1334(b) . . . .    As the Third Circuit held:

> The usual articulation of the test for determining whether a civil proceeding is related to bankruptcy is whether *the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy.* Thus, the proceeding need not necessarily be against the debtor or against the debtor's property.    An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate.

*In re Pacor, Inc.,* 743 F.2d 984, 994 (3d Cir. 1984) (emphasis in original; citations omitted).    We have accepted the *Pacor* articulation, albeit with the caveat that situations may arise where *an extremely tenuous connection to the estate would not satisfy the jurisdictional requirement.*

*Wolverine Radio Co.,* 930 F.2d at 1141-42 (some internal quotations; citations omitted) (second emphasis added). [10]    According to Sixth Circuit precedent, for purposes of establishing jurisdiction, the Court looks first to whether this Adversary Proceeding in its current status is at least "related to" Alma's Bankruptcy Case.    If this Adversary Proceeding is a "related to" proceeding, then the Court must next determine its ability to enter a final order in this Adversary Proceeding which involves an analysis of whether the claims are core or noncore.    11 U.S.C. § 157.    Both of the parties first address an analysis of the core vs. noncore aspects of this proceeding.    However, if the Adversary Proceeding is not at least a "related to" proceeding, the Court does not get to a core vs. noncore analysis.

---

[10] "While *Pacor* was [effectively] overruled on other ground by *Things Remembered, Inc. v. Petrar*, 516 U.S. 124, 134-35 (1995) (Stevens, J. concurring), the *Pacor* test for "related to" jurisdiction was discussed favorably by the U.S. Supreme Court in *Celotex Corp. v. Edwards*, 514 U.S. 300, 308, 115 S. Ct. 1493, 1499, 131 L. Ed. 2d 403 (1995), and in footnote 6 of *Celotex*, the Supreme Court noted that—as of that time—eight other circuit courts had adopted the *Pacor* test with little or no variation."    *Marks v. New Century TRS Holdings, Inc. (In re New Century TRS Holdings, Inc.)*, Bankr. No. 07-10416, Adv. No. 09-50244, 2011 WL 6097982, *2 n.5 (Bankr. D. Del. Dec. 7, 2011).

a.   This Adversary Proceeding is not a "related to" proceeding.

As indicated above, this dispute is drastically different than it was when it was originally filed.   This dispute was originally based on the allegedly dreadful treatment Alma received at the hands of the named Halle Entities and other entities controlled by Halle, subsequent to the parties entering into the 2007 Settlement Agreement.   Pikeville and the Williams Defendants were named as defendants by Alma in the original Complaint, but no substantive allegations were made against them by Alma and they were realigned as plaintiffs with respect to the original Complaint.   Consistent with this realignment of parties, Pikeville, Richard and the Williams Defendants were named as defendants again in the First Amended Complaint which was filed by THC as a Plaintiff—thus keeping the parties aligned on different sides of each other.   Richard and Banner were not parties to this Adversary Proceeding as originally filed but were added as defendants when the First and Second Amended Complaints, respectively, were filed.   The dispute as it now exists is based on the allegedly dreadful treatment Alma received at the hands of the Pikeville Defendants.   The allegations in the Second Amended Complaint are based on events that occurred subsequent to Alma entering into the Interim Mining Agreement, not the 2007 Settlement Agreement to which the Pikeville Defendants were not even parties.   The Adversary Proceeding as it has evolved is essentially an argument between two groups of nondebtor parties over which one committed the worst acts against Alma and eventually derailed Alma's possible reorganization.   As a result of the 2009 Settlement Agreement, Alma has no control over and incurs no expenses related to the Adversary Proceeding.   Further, the Halle Entities agreed to indemnify Spradlin from and against any and all claims by a third party that results from them exercising their rights under the 2009 Settlement Agreement.   This Adversary Proceeding will not "alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively)."   *Wolverine Radio Co.*, 930 F.2d at 1142.

THC asserts that this Court has at least "related to" jurisdiction as the outcome of the Adversary Proceeding could affect Alma's Bankruptcy Estate because of the possible increase in dividend paid to the general unsecured creditors.   However, the Sixth Circuit has modified the *Pacor* test by stating that "*an extremely tenuous connection to the estate [will] not satisfy the jurisdictional requirement.*"   *Wolverine Radio Co.*, 930 F.2d at 1142 (emphasis added).   What Plaintiffs fail to discuss, is the truly miniscule nature of any possible increase in dividend to the general unsecured creditors.

First, the claims of THC and Halle comprise $887,416.52 or 41.2 percent of the $2,152,979.45 in general unsecured claims.   (Trustee's Final Report, Ex. D).   Thus, 41.2 percent of any recovery for the Bankruptcy Estate is going right back to THC and Halle with the remaining 48.8 percent being distributed among the other general unsecured creditors. Assuming the Bankruptcy Estate receives $45,000 from the assignment, the general unsecured creditors will receive only $21,960 or an additional dividend of approximately 1 percent—but even that is speculative and does not take into account the additional reduction for the trustee's fees.

Second, any increase for the general unsecured creditors is further tenuous because the Plaintiffs must first be successful in prosecuting their action against the defendants before there is any recovery.

Finally, the Plaintiffs here have tried to "buy back" subject-matter jurisdiction.   "Parties may not contract to create jurisdiction as against a third party."   *Ilardo v. Al's Diesel, Inc. (In re World Parts, LLC)*, 322 B.R. 37, 42 (Bankr. W.D.N.Y. 2005).   Pursuant to the 2009 Settlement Agreement, the Halle Entities and Spradlin agreed that this Adversary Proceeding could be brought in the name of the trustee but the rights to prosecute the proceeding and at that time all proceeds recovered as a result of any litigation belonged solely to THC.   The Bankruptcy Estate had no rights left to prosecute the Adversary Proceeding or in any proceeds recovered.   The Alma Assignment merely gave the Bankruptcy Estate the possibility of increasing by a minimal

amount the dividend payable to the general unsecured creditors.   Spradlin still has no rights to prosecute or control the Adversary Proceeding.   All Spradlin possesses is an entitlement to proceeds, if any, from a cause of action that belongs to THC.   "While this court *may* have jurisdiction over an action against [THC] to recover the debtor's share in the proceeds of litigation, it does not have jurisdiction to determine the underlying claim of [THC] as against [the Pikeville Defendants]."   *In re World Parts, LLC*, 322 B.R. at 42 (emphasis added).   The Court finds that the Alma Assignment creates an extremely tenuous connection to the Alma Bankruptcy Estate which is not a sufficient basis upon which this Court may rely for subject-matter jurisdiction.

        b.    <u>The questions whether the claims are core or non-core, and whether the Court should abstain are moot</u>.

Because the Court does not have at least "related to" jurisdiction, it does not have subject-matter jurisdiction.   Therefore, we do not get to the parties' core vs. noncore arguments, including the Pikeville Defendants' arguments that the Supreme Court's *Stern v. Marshall* case applies.   Nor do we need to address any abstention arguments.

### CONCLUSION

For the foregoing reasons, the Court finds that this Adversary Proceeding is not a "related to" proceeding within the meaning of 28 U.S.C. § 1334(b); and this Court, therefore, does not have subject-matter jurisdiction.   Because the Court does not have jurisdiction over the Second Amended Complaint, the Motion to Dismiss is **SUSTAINED** and the Second Amended Complaint is **DISMISSED** as to Pikeville Energy Group, LLC, Gary J. Richard, and Banner Industries of N.E., Inc.   A separate judgment will be entered.

**Copy to:**
Michael J. Gartland, Esq.
Roger C. Simmons, Esq.
Joe F. Childers, Esq.
Richard A. Getty, Esq.
Ellen Arvin Kennedy, Esq.

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~
*The affixing of this Court's electronic seal below is proof this document has been signed by the Judge and electronically entered by the Clerk in the official record of this case.*



**Signed By:**
*Joseph M. Scott, Jr.*
**Bankruptcy Judge**
**Dated: Tuesday, January 24, 2012**
**(jms)**